KELLEY-GOODFELLOW SHOE COMPANY, J. N. McBATH AND
J. D. WORTHAM, INTERVENORS, V. LIBERTY
INSURANCE COMPANY.

No. 741.

1. **Evidence—Impeaching Witness.**—Where the character of a witness was sought to be impeached by showing that he had made statements out of court which were contradictory of his testimony, it was admissible to show by another person that in a conversation with such other person prior to the trial he had detailed the facts substantially as they were stated in his testimony.

2. **Evidence—Admissibility of Circumstances.**—In the proof of arson, involving as it does such moral turpitude and criminal intent, every circumstance tending to prove the guilty purpose is admissible in evidence; and a circumstance which, standing alone, would not tend to prove the main fact in issue, would be admissible if, in connection with other evidence, it tends to prove the issue.

3. **Practice—Jury—Challenges by Two Defendants.**—Where, in garnishment, plaintiff and intervenor were making common cause against the garnishee, they constitute one side of the cause, and the garnishee the other, and the intervenor can not on appeal complain that he was not allowed any challenges except in conjunction with plaintiff, and that plaintiff exhausted all his challenges, it not appearing that inter-

venor demanded an apportionment of the challenges, or that he was forced to accept any juror objectionable to him.

4. Fire Insurance Policy—Charge of Court.—In an action on a fire insurance policy, a charge that plaintiff was entitled to recover if he complied with all the stipulations of the policy is not reversible error, as not confining the inquiry to those stipulations of the policy which defendant claimed were not complied with, plaintiff having failed to ask for a more specific charge on this point.

5. Same—Iron Safe Clause—Warranty.—On a fire insurance policy there was a slip, partly printed and partly written, stating the amount of the policy and the property insured, and containing a clause, "subject to iron safe clause * * * attached." On a separate printed slip pasted on the policy was the iron safe clause, by which the assured agreed to keep a set of books secure from fire, and in case of loss to produce the books for the inspection of the insurer, and providing that on his failure to produce them the policy should be void. The policy stated, that it was accepted subject to such conditions as "may be indorsed thereon or added thereto." *Held*, that the iron safe clause was a warranty on the part of the assured, and that a compliance therewith was necessary to a recovery.

APPEAL from Lamar. Tried below before Hon. E. D. McCLELLAND.

*Dudley & Moore*, for appellant The Kelley-Goodfellow Shoe Company.—1. The testimony of the witness Hancock, to the effect that the defendant McBath had tried to hire him to burn another building besides the one in which he was doing business, tended to prove no issue in the case, was calculated to prejudice the jury, and should have been excluded.

2. The court erred in permitting the witness George Henley to detail the statements made to him by Duke Cummins, because the same was hearsay, and was the self-serving declarations of the witness Cummins; and especially was that part of the statement with reference to his employment by McBath to burn the Bywaters building, because the same was irrelevant to the issue in the case, and the witness ought not to have been permitted to bolster up his testimony by the proof of his own declarations on an irrelevant issue. Noel v. Denman, 76 Texas, 306; 1 Whart. on Ev., secs. 547, 551, 559, 570; Tucker v. Hamlin, 60 Texas, 171; 1 Greenl. on Ev., sec. 469; Ellicott v. Pearl, 10 Pet., 412; Gates v. The People, 14 Ill., 434.

3. A condition upon a printed slip, that the assured shall keep a set of books showing a complete record of all his business, including all his sales, both for cash and on a credit, in an iron safe, etc., pasted on the policy of insurance covering a stock of goods, not with the promises and agreements made by the assured, but among the stipulations and promises of the insurer, is not a warranty, and will not avoid the policy, though not observed by the assured. Goddard v. Ins. Co., 67 Texas, 69; Ins. Co. v. Brin, 3 W. & W. C. C., sec. 333; Wood v. Ins. Co., 13 Conn., 533; Schults v. Ins. Co., 57 Mo., 331; Ins. Co. v. Cotheal, 7 Wend., 72; Ins. Co. v. Robinson, 59 Ill., 123; Wightman v. Ins. Co., 8 Rob. (La.), 442; Catlin v. Ins. Co., 1 Sumn., 434; Benham v. Ins. Co.,

7 Exchr., 744; 16 Jur., 691; 21 L. J. Ex., 317; Frisbie v. Ins. Co., 27 Pa. St., 325; May on Ins., secs. 158, 162, 164, 178, 216, 217.

*Lightfoot, Denton & Long,* for appellants McBath and Wortham.

1.   It was error to allow the witness Duke Cummins to make testimony upholding his own, by introducing his own statements claimed to have been made to witness George Henley, for the express purpose of bolstering his own evidence.   Such testimony is self-serving and hearsay. Dwyer v. Ins. Co., 63 Texas, 354; Railway v. Ivy, 71 Texas, 417; 1 Greenl. on Ev., 469; Howe v. Thayer, 34 Mass., 97.

2.   The court erred in refusing to allow intervenors to make any challenges of jurors, and in requiring them over their objection and protest to accept the jury without the right to challenge a single juror. Rev. Stats., art. 3084; Jones v. Ford, 60 Texas, 130.

3.   The court erred in its charge to the jury in this, that in its first and subsequent charges the court instructed the jury, that in order to recover it must be shown that all the stipulations in the policy were complied with by J. N. McBath, without confining it to such stipulations as had been put in issue by the pleadings.   Ins. Co. v. Hazlewood, 75 Texas, 348; Belcher v. Fox, 60 Texas, 527; Railway v. Gilmore, 62 Texas, 392.

4.   When a printed slip, claimed as the iron safe clause, which is promissory in its nature, and does not affect the risk itself, is pasted on the face of the policy and is not referred to in any other part of the instrument, but appears to be a printed slip pasted in that part of the policy containing the stipulations of the insurer, and in a different portion of the instrument from the stipulations on the part of the insured, and such clause does not appear to have been called to the attention of the insured, such clause will at most be treated as a representation and not as a condition of the policy.   Ins. Co. v. Brin, 3 W. & W. C. C., sec. 333; Ins. Co. v. Gordon, 68 Texas, 144; Banking Co. v. Stone, 49 Texas, 13–15; Ins. Co. v. Starr, 71 Texas, 733; Bank v. Ins. Co., 95 U. S., 673; Mouler v. Ins. Co., 111 U. S., 336; Ins. Co. v. Raddin, 120 U. S., 183; Bank v. Ins. Co., 88 Cal., 497; 22 Am. St. Rep., 326; 11 Am. and Eng. Encyc. of Law, 294, notes 2, 3; Ins. Co. v. Johnson, 2 South. Rep., 125; Hartford v. Harmer, 2 Ohio St., 452, 459; May on Ins., 162, 165, 170, 178.

5.   Forfeitures and penalties are not favored in law.   Instruments creating them must be strictly construed, and where the court in its charge goes beyond the terms of the instrument to reach a forfeiture, such charge is clearly erroneous.   Ins. Co. v. Hazlewood, 75 Texas, 347; Goddard v. Ins. Co., 67 Texas, 73; Ins. Co. v. Brin, 3 W. & W. C. C.; sec. 333; Ins. Co. v. Gordon, 68 Texas, 141; Mouler v. Ins. Co., 111 U. S., 335; Bank v. Ins. Co., 95 U. S., 673; Campbell v. Ins. Co., 98 Mass., 391; Hartford v. Harmer, 59 Am. Dec., 684; Daniel v. Ins. Co., 66 Mass., 424; Hoffman v. Ins. Co., 88 Am. Dec., 337; Blood v. Ins. Co., 66 Mass., 472.

*Allen & Allen* and *Leake, Shepard & Miller*, for appellee.—1. It is admissible to show that a witness has made similar statements to what he has testified in the cause. Where a design to misrepresent is charged upon the witness, in consequence of his relation to the party or cause, in such case it is admissible to show he made such statement before such relation existed, and before he could have any design in making them. Lewy v. Fischl, 65 Texas, 318; 1 Greenl. on Ev., sec. 469; 2 Phil. on Ev., 974.

2. The bill of exceptions does not show that intervenors requested the court to grant them permission to challenge a portion of the six, but that after the six had been challenged by the plaintiff, the court refused to allow intervenors to challenge others; they never requested division, but wanted six more. Jones v. Ford, 60 Texas, 130; Wolf v. Perryman, 82 Texas, 115; 75 Texas, 414.

3. When a printed slip, as the iron safe clause, which is promissory in its nature, is pasted on the face of a contract, and is referred to in the contract in these words, "subject to the iron safe clause and electric light permit attached," and these words are entered upon the iron safe clause, "attached to and forming part of policy number 178,601 of the Liberty Insurance Company," and when the policy itself provides that all conditions must be written on the face or attached to it, the same will become a part of contract when attached or written. Banking and Ins. Co. v. Stone, 49 Texas, 4; Goddard v. Ins. Co., 67 Texas, 69; Ins. Co. v. Parham, 80 Texas, 518; May on Ins., secs. 156, 159; 1 Phil. on Ins., sec. 542; 10 Pick., 44; Rich. on Ins., secs. 55, 154; Custman v. Ins. Co., 63 N. Y., 404; Bobbitt v. Ins. Co., 8 Am. Rep., 494; same case, 66 N. C., 70; Underwriters Assn. v. George, 97 Pa. St., 238; Ripley v. Ins. Co., 86 Am. Dec., 362, and note; Baker v. Ins. Co., 24 N. E. Rep., 1041; Ins. Co. v. Pyle, 44 Ohio St., 19; same case, 58 Am. Rep., 781; Sheldon v. Ins. Co., 58 Am. Dec., 420; Ins. Co. v. Thompson, 21 S. W. Rep., 469.

FINLEY, ASSOCIATE JUSTICE.—The following from appellants' brief is a substantially correct statement of the case: This suit originated in a garnishment proceeding, as follows: The Kelley-Goodfellow Shoe Company sued J. N. McBath in the District Court of Lamar County, and sued out a writ of garnishment against the Liberty Insurance Company, which was duly served, and on February 27, 1892, the garnishee answered under oath, denying the indebtedness to J. N. McBath, on the alleged grounds that no proofs of loss had been furnished in accordance with the policy. April 2, 1892, the answer was duly contested by the plaintiff, setting up the policy, loss, and proofs of loss.

April 25, 1892, the debtor, J. N. McBath, joined by J. D. Wortham, trustee, who intervened, filed their contest and plea of intervention, under oath, contesting the answer of the garnishee, the Liberty Insurance Company; and setting up, that about April 30, 1891, the said

insurance company issued to said J. N. McBath its policy of insurance against fire for $2500 on his stock of goods, in Paris, Texas, on which the premium was duly paid; that about January 13, 1892, the property was damaged and destroyed by fire; that notice of the loss was duly given in accordance with the policy; that after the loss, J. N. McBath, being indebted to various parties, pledged, transferred, assigned, and delivered the policy to J. D. Wortham, trustee, February 3, 1892, to collect and pay the proceeds on such debts, and that such trustee and the assured had in all things complied with the terms of the policy; and on February 6, 1892, had made full proofs of loss in accordance therewith, alleging the refusal of the insurance company to pay, and asking for judgment.    These allegations were formally tendered as issues.

Tenders of issues were made both by the plaintiff and defendants, and in an amended pleading, filed October 3, 1892, the garnishee presented the following issues, after general denial: 2. That the assured failed to keep a set of books showing a complete record of his business, in accordance with the iron safe clause of the policy, which was a warranty.    3. That he failed to exhibit the books so kept after the fire, so as to enable them to ascertain the exact loss.    4. That the loss was not total, and that there was other insurance, amounting in all to $25,950, and that the garnishee's part would not amount to over one-half the amount claimed.    5. That there was $500 over-insurance, without the consent of the insurer, contrary to the terms of the policy. 6. That the assured was not the sole and unconditional owner of the property insured.    7. That the assured made misrepresentations in his proofs of loss.    8. That the property was destroyed by the procurement and consent of the assured.    9. That the assured made false representations at the time of procuring the policy as to the value of the stock.

For reply thereto, the intervenors deny all the allegations of the defendant, and deny that the assured in any manner violated any of the conditions of the policy, but allege full compliance with its terms. 2. They deny that the pretended iron safe clause was a condition of the policy, or a warranty; but aver that the same is a separate piece of paper pasted onto the face of the policy, and wholly disconnected, and among the stipulations made by the company, and not among those of the assured, and printed in small type, so as to escape notice; and the existence of the same escaped the notice of the assured, and was never called to his attention until after the fire.    They deny that it was or is material; but they aver that in any event no injury has occurred by reason thereof, because the assured did keep a set of books in an iron safe, as provided therein, and that he kept a complete record of his business as therein provided, and that after the fire he tendered said books to defendant for examination, and still offers them.    That said loss was and is fully shown from said books and inventory, and the proof of loss.    3. They deny that the loss was only partial, but set

out all the insurance and names of companies, and show a total loss. 4. They deny any condition or warranty in the policy that no additional insurance should be taken, but set out full consent of the defendant to all the insurance taken, and aver the consent of defendant's agent thereto and his agreement to indorse the same on the policy, and that the policy had been taken by him for that purpose, and he told the assured it was made, and if he failed to make the proper indorsement it was an oversight and mistake on his part. 5. They deny any false statements whatever as to the value of the stock, or that the same was over-valued, but allege that the agent of the defendant examined the invoice and the goods before the issuance of the policy. 6. They allege the unconditional ownership of the goods in the assured. 7. They deny that the assured ever in any manner procured the property to be burned, but declare that the fire occurred during the absence of the assured, and without any fault on his part.

The plaintiff adopted the allegations of intervenor's first supplemental petition, October 3, 1892. The case was tried October 8, 1892, and judgment rendered on the verdict of a jury in favor of defendant, from which this appeal was taken.

The defendant's witness, Duke Cummins, testified, that a week or ten days before the fire, the assured, J. N. McBath, attempted to hire him to burn the building in which the insured goods were situated. He testified, that when the assured first approached him on the subject he told him that the building he wanted him to burn was the Bywaters building, on South Main street; that afterward he explained to him that it was not that building, but the one occupied by himself, which he desired to be burned. The assured had no interest whatever in the Bywaters building; it was occupied by a friend of the assured. The truth of the testimony of Cummins was denied by McBath, the assured; and the witness Williams testified, that Cummins had a conversation with him after the fire, in which he stated that detectives had been trying to get him to swear to such statements, but he (Cummins) had refused to do so, because it was a lie. To support the testimony of Cummins, the insurance company introduced George Henley, who testified, that before the fire occurred he had a conversation with Cummins, in which Cummins detailed to him the facts sworn to by Cummins, as above related. The testimony of Henley was objected to as irrelevant, hearsay, and self-serving declarations. The admission of this testimony is the subject of the first assignment of error.

The character of the witness was sought to be impeached by showing that he had made statements out of court, which were contradictory of his testimony; and it was also sought to be shown that he was mad at the assured for not selling him a suit of clothes on credit. The material testimony of the witness being directly contradicted, and his character as a witness attacked in the manner stated, the court did not err in admitting the evidence of witness Henley. Lewy v. Fischl,

65 Texas, 318; Greenl. on Ev., sec. 469; Commonwealth v. Wilson, 1 Gray, 340.

It is also contended that the court erred in permitting the witnesses Cummins and Hancock to testify, that the assured endeavored to get them to burn a building in which he had no interest—the Bywaters building. The witness Hancock testified to such a proposition having been made to him by the assured, and that he promptly rejected it. Cummins testified, that he was approached in the same way, and after he took the proposition under consideration, the assured explained to him that it was the building he was occupying that he desired to be burned. We think Cummins' testimony clearly admissible, and that, in the light of it, Hancock's was also admissible. The evidence of Cummins showed, if true, that McBath wanted the crime of arson committed for the purpose of getting insurance money, and that his manner of approaching a person to secure its commission was, first, to suggest the burning of a house in which he had no interest, and if the proposition was entertained, then to give the information that it was his house which he wanted burned. In the proof of an issue of such a character as arson, involving as it does such moral turpitude and criminal intent, every circumstance tending to prove the guilty purpose is admissible in evidence. A circumstance which, standing alone, would not tend to prove the main fact in issue, would be admissible if, in connection with other evidence, it tends to prove the issue. Such is the character of this evidence, and it was admissible.

The court, over objections, permitted witnesses to testify, that the building and stock of goods presented the appearance of having been coal-oiled, and to finding coal oil and a coal oil can in the building.

It is urged that the only defense, or reason, set up by the garnishee in its sworn answer to the writ of garnishment, why it should not be charged, was that no proof of loss had been made, and it is insisted that the evidence should have been confined to that issue. The same character of objection was made to the admission of all evidence tending to prove the defenses set up in the pleadings of the insurance company. No exceptions were presented to the irregularity of the pleadings of the defendant, the issues upon which the evidence bore were fully made by the pleadings, and the objection to the evidence was untenable.

The intervenors assign as error the action of the court in refusing to allow them to make any challenges of jurors, and requiring them, over their objection and protest, to accept the jury without the right to challenge a single juror. The bill of exceptions recites: "The jury was sworn and the jury lists made out, and the intervenors demanded of the court a jury list, and the privilege of challenging the number of jurors to which they were entitled, and the court refused such intervenors any jury list, and held that such intervenors were not entitled to challenge any jurors, except in conjunction with plaintiff Kelley-Goodfellow Shoe Company, who exhausted all their challenges, to wit,

six, and refused to allow intervenors to make any challenges on their list; and the court refused to allow intervenors any other challenges."

There was no controversy between the plaintiff and intervenors. They were making a common fight against the insurance company, and none against each other. The plaintiff and intervenors represented one side of the case, and the insurance company the other. Within the meaning of article 3084 of the Revised Statutes, the plaintiff and intervenors were one party, and together were entitled to only six challenges. Jones v. Ford, 60 Texas, 130; Wolf v. Perryman, 82 Texas, 112.

If they disagreed as to the jurors to be challenged, they should have appealed to the court to have settled their rights by allowing each a certain number of the challenges, and it would have been the duty of the court to have done so. It appears, however, that intervenors demanded a separate jury list, and demanded the right to make separate and independent challenges without presenting any request to the court for apportioning the challenges. Under the facts, as given in the bill of exceptions, we can not say that the court's action was error. If it were error, the bill fails to disclose that intervenors were forced to accept any juror who was objectionable to them, and no injury is shown to have been sustained from the action of the court.

The court charged the jury as follows: "1. That the uncontroverted evidence shows that the defendant executed and delivered to J. N. McBath the policy sued upon, and that the stock of goods upon which said policy issued was burned and damaged during the time for which it was issued; and I therefore instruct you, if you *find that the stipulations in said policy were complied with by J. N. McBath*, to return a verdict for plaintiff for the damages to the goods, under the rules for assessing damages, hereinafter given, unless you should find a verdict for defendant upon some one or more of the defenses set up by it, under instructions hereinafter given you."

This charge was objected to, because it was not confined to the stipulations in the policy which were alleged to have not been complied with. Appellee correctly answers this proposition, as follows: "The objection is, that the court did not confine this to the particular stipulations in the policy that were in issue, and in the course of argument reference is made to the vast number of conditions and stipulations contained in the policy, which might under the charge have affected the jury. It is impossible for this charge to have had any such effect. It is apparent that it is only such stipulations in the contract as were made issues in the case that could have been referred to, and a jury could not have understood it in any other way. If the intervenors feared such an effect, and desired a more specific charge upon the question, it was their duty to ask the same of the court."

The fifth paragraph of the court's charge is as follows: "5. Under a clause in the policy sued on designated therein as iron safe clause, and which I instruct you forms a part of said policy, J. N. McBath covenants and agrees to keep a set of books showing a complete record

of business transacted, including all purchases and sales, both for cash and credit, together with the last inventory of his business, and in case of loss, to produce such books and inventory, and that in the event he should fail to do so said policy should be void; and I instruct you that if you find that J. N. McBath failed to keep a set of books in compliance with the provisions of said iron safe clause, then said policy is null and void, and you will return a verdict for the defendant."

At the request of the defendant insurance company, the following special charge was given: "If you find from the evidence that the set of books as kept by the assured in compliance with the iron safe clause do not show a complete record of his business transacted, or if you find from the evidence that said books so kept by him fail to show all his purchases of merchandise, both for cash and on a credit, or if you find from the evidence that the set of books as kept by him and presented in evidence do not contain a record of all his sales made, both for cash and on a credit, then you will find for the defendant."

Appellants insist that the court erred in the main charge, and special charge above quoted, by construing the iron safe clause as a part of the policy and a warranty.

The policy of insurance mentioned in the pleadings was countersigned at Paris, April 30, 1891; and in the body of it insures J. N. McBath, in consideration of $43.75 premium paid, from April 30, 1891, to April 30, 1892, for $2500, on the following described property [then follows a slip of paper pasted into the face of the policy, a part printed and a part written, the printed part being italicized for identification], to wit:

"*Mercantile Form.*—$2500 *on* his *stock of merchandise, consisting chiefly of dry goods, clothing, boots, shoes, hats, furnishing goods, notions, carpets and other merchandise not more hazardous, usually kept in dry goods stores, and contained in the 3-story* brick tin *roof building situated* at No. 144, block 2, South Main street, Paris, Texas.   Subject to the iron safe clause and electric light permit attached.   $20,850.   *Total concurrent insurance permitted subject to iron safe clause and electric light permit attached.*                      "J. W. FULTON, Agent."

On a separate slip of paper pasted to the policy below above slip, are the following printed words (except the number of the policy and the signature of the agent, which are written with ink):

"IRON SAFE CLAUSE.—The assured under this policy hereby consents and agrees to keep a set of books, showing a complete record of business transacted, including all purchases and sales, both for cash and credit, together with the last inventory of said business, and further covenants and agrees to keep such books and inventory securely locked in an iron fire-proof safe at night, and at all times when the store mentioned in the within policy is not actually open for business, or in some secure place not exposed to a fire which would destroy the

house where such business is carried on; and in case of loss, the assured agrees and covenants to produce such books and inventory, and in the event of a failure to produce the same, this policy shall be deemed null and void, and no suit or action at law shall be maintained thereon for any such loss.    Attached to and forming part of policy number 178,-601, of the Liberty Insurance Company.          "J. W. FULTON."

In the face of the policy, in writing, are these words: "Sept. 4/91. Permission is granted hereby for assured to remove the property covered by this policy of insurance to the two-story brick building, with metal roof, occupied by assured as a dry goods store, situate at No. 106 north side public square, Paris, Texas, and all liability ceases at this date at the former location, and policy covers same property in new location.    The rate in new location, 1.30.    There is therefore returned to assured $7.50 of the premium.    J. W. Fulton, ex. of., Paris, Texas. Jany. 7/92.    $25,000 total concurrent insurance permitted.    J. W. Fulton, ex. of."

Then follow printed stipulations on the part of assured, among which are the following: "If any application, survey, plan, or description of property be referred to in this policy, it shall be a part of this contract and a warranty by the assured."

Also the following: "This policy is made and accepted subject to the foregoing stipulations and conditions, together with such provisions, agreements, and conditions as may be indorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any condition or provision of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such conditions and provisions, no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured, unless so written or attached."

It will be seen that the clause describing the property insured was itself pasted on the face of the policy, and this specific description of the insurance, without which the policy could have no effect, contains the recital, "subject to the iron safe clause attached."    The iron safe clause was pasted in the blank space for that purpose, and has written on it, "attached to and forming a part of policy No. 178,601 of the Liberty Insurance Company.    [Signed] J. W. Fulton, Agent."    Then follow indorsements upon the further blank spaces, of removal, concurrent insurance permitted, etc., and then come in regular order the other printed covenants, conditions, etc., of the policy.    The policy concludes with the following:    "This policy made and accepted subject to the foregoing stipulations, agreements, and conditions, and such as may be indorsed thereon or added hereto," etc.

In construing the iron safe clause as the same appears pasted upon the face of the policy, is the same to be construed as a warranty, or only a representation? By its terms, the clause is a promissory warranty; it is ordinarily placed upon and pasted to a blank space in the body of the policy, and is referred to in the policy; that is, in that part of the policy giving amount of insurance and the property insured, this part of the policy being itself a slip pasted on the main sheet of paper, containing stipulations, conditions, etc. In this condition the policy was delivered to the assured, in this condition he retained it, and in this condition a recovery is sought upon. There is no reasonable ground upon which this clause could be discarded and stricken from the terms of the contract; the intention to make it a part of the contract is as clear as it is in relation to any of the other clauses. The clause, then, being a part of the contract, it was the duty of the court to instruct the jury as to its legal import. It should not be treated as a warranty unless it was clearly intended as such. If there was any ambiguity in its terms, the doubt should be given in favor of the assured, and it should be treated only as a representation. If, however, it be clear in its expression of intention, the court must enforce its terms. The court is called upon to enforce the contract, and not to reform it. It can not treat as a representation that which was intended as a warranty, without destroying the real contract between the parties. The clause in question is clear and unequivocal in its expression of the intention of the parties; it is a covenant of warranty, a compliance with which is necessary to a recovery. Ins. Co. v. Stone, 49 Texas, 11; Goddard v. Ins. Co., 67 Texas, 69; Ins. Co. v. Wilkerson, 13 S. W. Rep., 1103; Landman v. Ins. Co., 19 Ins. L. J., 572; Ins. Co. v. Jones, 15 S. W. Rep., 1034; Jones v. Ins. Co., 38 Fed. Rep., 19.

The issue of fact, whether the assured complied with the terms of the warranty, was fairly and correctly presented to the jury. None of the objections made to the main charge or special charge given are tenable.

The sixth paragraph of the court's charge is as follows: "6. If you believe from the evidence that at the time J. N. McBath procured the policy sued upon, or at any time, when he obtained defendant's consent to additional insurance, he made representations to the defendant's agent as to the value of the stock of goods, in which he represented that the stock was worth more than it really was worth, and if J. N. McBath made such representations falsely and knowingly, and with a fraudulent intent thereby to procure the policy sued upon, or to procure consent of defendant to additional insurance, and if the defendant's agent relied upon such representations, and was thereby induced to issue the policy sued on or to allow additional insurance, then you will return a verdict for the defendant; but in this connection, I instruct you that a mere mistake in the judgment or opinion as to the value of the goods on the part of McBath, would not amount to a fraud. Before a misrepresentation as to value would amount to a

fraud such as to bar his recovery, it must have been made by him with a knowledge that it was false, and must have been relied upon and acted upon by the defendant, as above stated."

Complaint is made of this charge, upon the ground that there was no evidence justifying the submission of the issue to the jury. The record does not sustain this proposition. The issue was made by the pleadings, and there was evidence sufficient to require its submission for the determination of the jury.

There are no other assignments of error which it is deemed necessary to discuss in this opinion. There is no assignment of error raising any question as to the sufficiency of the evidence to sustain the verdict of the jury, and finding no material error occurring on the trial, the judgment is affirmed.

*Affirmed.*

Delivered September 26, 1894.

### ON MOTION FOR REHEARING.

FINLEY, Associate Justice.—The fourth ground set out in the motion for rehearing complains of the action of the court below in giving, and this court in approving, the following special charge requested by the insurance company: "If you find from the evidence that the set of books as kept by the assured in compliance with the iron safe clause do not show a complete record of his business transacted; or if you find from the evidence that said books so kept by him failed to show all his purchases of merchandise, both for cash and on credit; or if you find from the evidence that said books so kept by him and presented in evidence do not contain a record of all his sales made, both for cash and on credit, then you will find for the defendant."

The main charge of the court given upon this particular feature of the case was as follows: "Under the clause of the policy sued on, designated as the iron safe clause, and which I instruct you forms a part of said policy, J. N. McBath covenants and agrees to keep a set of books showing a complete record of business transacted, including all purchases, both for cash and credit, together with the last inventory of his business, and in case of loss, to produce such books and inventory, and that in the event he should fail to do so, said policy should be void; and I instruct you that if you find that said J. N. McBath failed to keep said books and inventory in compliance with the provisions of said iron safe clause, then said policy is void, and you will return a verdict for the defendant."

In addition to the charges above quoted, at the special instance of plaintiffs and intervenors, the following instruction was given to the jury: "I charge you, that if you believe from the evidence that McBath kept a set of books and invoice of his goods which would show the amount of his purchases and loss, both for cash and on credit,

showing a record of his business with reasonable certainty, so that the loss could be determined with reasonable certainty in the case of fire; and if you further believe from the evidence that the said J. N. Mc-Bath produced said books and invoice to the defendant insurance company, after the fire, this would be a compliance with the iron safe clause of said policy."

The main charge of the court, and the special charge given at the request of the insurance company, contain the language used in the iron safe clause itself as to the books required thereby to be kept by the assured. The special charge given at the instance of appellants instructed the jury what would be a substantial compliance with the requirements of the iron safe clause. We think the obligations assumed by the assured under the iron safe clause were presented to the jury in as favorable a light to appellants as they were entitled to demand.

Appellants request this court, in case it should overrule the motion for rehearing, to find, as a matter of fact, that the iron safe clause is a representation, and not a warranty. In the opinion of the court we announced the view that the iron safe clause, as a matter of law, should be treated as a warranty. It is such by its plain terms; and it was the duty of the trial court to so instruct the jury, which it did upon the trial. This is a question of law to be decided by the court, and not a matter of fact to be determined from the evidence.

We are also requested by the appellants to find that the value of the stock of goods destroyed by the fire was greater than the amount of insurance upon the stock; and to find that the insured did keep a set of books, consisting of a day book, blotter, journal, ledger, invoice, and bill book, upon which cash items were kept, but that he kept no separate cash book. From the books alone, it is shown that the value of the stock of goods on hand at the time of the fire could not be accurately ascertained, but with the books and other extraneous evidence produced upon the trial, it was shown that the stock of goods was worth more than the amount of the insurance upon the stock, viz., about the sum of $29,820. This, however, was an issuable matter before the jury, and the evidence relative to the value of such stock can not be said to be uncontroverted. The evidence shows also that the insured did keep a set of books, consisting of a day book, blotter, journal, ledger, invoice, and bill book, and that some cash items were entered in some of these books, but no separate cash book was kept showing the cash sales.

There is no assignment of error that the evidence adduced upon the trial was contrary to the verdict of the jury; and it is not necessary for us to review the facts in the case with the view of determining whether or not the verdict is properly based upon the evidence. We find these facts at the request of counsel for the appellants, so that the correctness of the charges complained of may be viewed in the light of the evidence adduced on the trial.

We have carefully considered the motion for rehearing upon all of the grounds set out; but have found no reason to change our views as expressed in the opinion heretofore rendered.

The motion for rehearing is overruled.

                                                        *Overruled.*

Delivered October 24, 1894.

LIGHTFOOT, Chief Justice, did not sit in this case.

Writ of error refused.