GEORGIA HOME INSURANCE CO. v. N. R. O'NEAL ET AL.

Delivered October 10, 1896.

**1. Practice on Appeal—Trial Court's Failure to Make Findings of Facts.**

Neglect of the trial court to file written findings of fact, upon request in writing therefor, will not be held reversible error, where it does not appear that such request was brought to the court's attention, and no injury appears to have resulted therefrom.

**2. Insurance Company—Iron Safe Clause—Waiver of Forfeiture.**

Where the insurance company, after knowledge of a noncompliance by the insured with the conditions of the iron safe clause, causes him to be examined as to the loss pursuant to a clause in the policy, it thereby waives the forfeiture stipulated for such noncompliance.

ERROR from Hunt. Tried below before Hon. E. W. TERHUNE.

*Morgan & Thompson*, for plaintiff in error.

*B. Q. Evans*, for defendant in error.

FINLEY, ASSOCIATE JUSTICE.—*Statement.*—This was a suit in the District Court of Hunt County, Texas, by N. R. O'Neal and T. H. King, defendants in error, against the Georgia Home Insurance Company, plaintiff in error, upon a fire insurance policy for $1000, issued December 30, 1894, by plaintiff in error to the said N. R. O'Neal, to run one year, and covering his stock of merchandise in a certain store in the town of Greenville, Texas. The petition alleged total destruction of said stock by fire January 21, 1895, and assignment of the policy as collateral security to T. H. King after the fire, and sought to recover the full amount of the insurance and interest.

The defendant company answered by general and special demurrers, general denial and special pleas, alleging that the policy contained a three-fourths value clause, that there was other insurance, and that de-

fendant was not liable in any amount because of failure of the assured to comply with the requirements of that portion of the policy known as the iron safe clause, and because of fraud and false swearing in the proofs of loss.

The plaintiffs replied by a supplemental petition, setting up:

"1. That it is true that the policy contained an iron safe clause, and if the same was not complied with, such failure did not arise from any intention on the part of plaintiffs to deprive the defendant of any evidence as to the amount of the stock on hand at the time of the fire, because they say that they were wholly ignorant of the existence of any clause in the policy imposing this duty upon them, that the policy was issued without application, by the general agents of the company, and kept in their possession until after the fire, and if the condition was not complied with, the same was without injury, as a complete proof of loss has been furnished to defendant at its request.

"2. Plaintiffs say that if there has been a breach of the condition called iron safe clause, which plaintiffs deny, that any forfeiture thereby has been long since waived by the defendant, and the defendant by its conduct is estopped to deny its liability on said policy, for the reasons: (1) That Byrd & Chapman, general agents of the company, with full knowledge of all the facts constituting the alleged forfeiture, delivered to plaintiffs the policy after the fire, and did not claim any forfeiture, but promised that it should be paid. (2) Plaintiffs show that in said policy there is authority given the defendant to subject the assured to a written examination in these words, 'if required, the assured shall submit to an examination or examinations under oath by any person appointed by the company touching all questions deemed by him pertinent to the loss, and subscribe such examination or examinations when reduced to writing, and a refusal to answer such questions and subscribe to such examinations when reduced to writing, shall cause a forfeiture of all claims under this policy.' That on February 2, 1895, after the fire, the defendant, with full knowledge of all the facts constituting the alleged forfeiture, required plaintiff N. R. O'Neal to appear before L. N. Byrd, who was appointed by defendant for said purpose in pursuance of its authority contained in said clause, and to submit to a vigorous inquisitorial examination and subscribe to the same; that defendant did not by agent or otherwise claim any forfeiture until after said examination was completed, but on the other hand led plaintiff to believe that said examination was only sought for the purpose of a formal proof of loss, and that the same would be paid; that such examination was not demanded by the defendant for the purpose of ascertaining the facts constituting the alleged forfeiture first learned by the defendant or its agent, the adjuster, at this examination, but that all the facts constituting such forfeiture were fully known to defendant and its adjuster long prior to said examination; that said examination was demanded by the defendant, acting by its agent, as plaintiffs now believe, for the purpose of entrapping plaintiffs; that by reason of the said examination the

defendant recognized the validity of said policy and subjected plaintiff to trouble and expense, thereby waiving any forfeiture of said policy by reason of any failure on the part of plaintiff to comply with the iron safe clause condition in said policy. (3) That defendant acting by and through its general agents, Byrd & Chapman, with full knowledge of all the facts constituting the alleged forfeiture, induced plaintiff to make proof of loss, which he did on March 16, 1895, at an expense to him of $50. Also induced plaintiffs to institute suit on the policy with the promise that the policy would be paid. That after the defendant received said proof of loss, on or about March 17, 1895, it kept possession of the same until this suit was filed, and never denied liability on the policy," etc.

The defendant replied by a supplemental answer, in which it demurred generally and specially to the plaintiffs' supplemental petition, and denied all of its allegations. The case was tried by the court without a jury, and judgment rendered in plaintiffs' favor for the full amount sued for, from which this appeal is prosecuted.

The record contains no findings of fact or conclusions of law filed by the trial judge.

The first assignment of error complains of the court for neglecting and failing to file written findings of fact and conclusions of law. We find in the record a written request signed by counsel for the insurance company, addressed to the court, to file findings of fact and conclusions of law.

As above stated, we do not find any such findings of fact or conclusions of law in the record. No bill of exceptions was reserved to the action of the court in failing to comply with this request, and there is nothing in the record showing that the written request was called to the attention of the court. The issue sought to be raised, and revised by this appeal, has been fully considered by this court, and in this particular case no injury seems to have resulted to the plaintiff in error by the failure of the court to file conclusions of fact and law. Under this state of the record, we are of opinion that this assignment does not present reversible error. City National Bank of Fort Worth v. Scott, 61 Texas, 571.

The second, third and fourth assignments of error, constituting all of the remaining assignments presented to this court, attack the judgment of the court below upon the ground that the policy was shown to be forfeited by violation of the iron safe clause in the policy, and that the plaintiff failed to show that this forfeiture had been waived by the acts of the insurance company, through its agents. Under these assignments of error we will give our conclusions of fact, based upon the evidence contained in the record:

1.  The issuance of the policy as alleged in the pleading was established.

2.  The loss of the property insured, by fire, without the fault of th assured, was established.

3.  Damages were shown to the amount awarded by the judgment.

4.  The policy contained what is known as the iron safe clause, requiring that a set of books should be kept showing the condition of the business, etc., and they should be securely locked in a fire proof safe at night, and at all times when the store was not open, or kept in some secure place, not exposed to fire which would destroy the house where the business was carried on.  This clause provided that a failure to comply with its terms should work a forfeiture of the policy.

5.  It was shown that the assured violated this iron safe clause of the policy by leaving all of his books, except his ledger, out of the safe on the night of the fire, and in which they were destroyed, and such books could not be produced on demand of the insurer.

6.  After the fire occurred and the insurance company had received notice of the same, they sent their adjuster to Greenville to adjust this loss.  After the said agent of the insurance company was fully informed of the violation of the iron safe clause by the assured, he required the assured to submit to a written examination under oath, touching matters generally in relation to the fire and the loss.  After this examination had been accomplished, the adjuster of the company tendered the assured the amount of the unearned premium, and notified him that his policy was void.

7.  Byrd & Chapman, who resided at Greenville, were the agents of the insurance company who issued the policy here sued on.  They had authority to issue policies and collect premiums.  They told the assured that his loss was a valid claim against the company, and told him to make out his proofs of loss and send them off, and that the company would pay the loss notwithstanding the action of the adjuster.  The assured took their advice and made out and forwarded his proofs of loss to the insurance company.  The company failing to make any adjustment of the loss, said agents advised the assured to institute this suit for recovery of the amount of the policy.

8.  Byrd & Chapman had instructions from the assured to the effect that whenever his policy expired they were to issue him a new one in place of the expired policy, and the policy herein sued on was issued by Byrd and Chapman pursuant to these instructions in place of one which had expired, and was not issued upon any special application, and the policy was held by said agents and nothing said about it, and it was not delivered until after the fire.  The policies previously issued to the plaintiff contained the iron safe clause, but he had no knowledge of the contents of this particular policy.

*Conclusions of Law.*—The contention of the plaintiff in error is that the policy was forfeited by reason of the assured's failure to comply with the iron safe clause.  It was the right of the insurance company to treat the policy as forfeited when it ascertained the fact upon which the forfeiture could be based.  That right the insurance company could exercise or not, as it might see fit.  If the policy was forfeited by fail-

ure to comply with the iron safe clause, and that fact was known to the insurer, it had no right to subject the assured to an examination under oath by reason of a provision in the policy.   The company having the right of election to treat the policy as forfeited or not, must do one or the other.   It cannot claim the policy as forfeited for some purposes, and valid as to others.   When it once acts, with full knowledge of the facts, it will be bound by its election, and cannot afterward be heard to assert the invalidity of the policy when it has previously chosen to treat it as valid, with knowledge of the facts upon which the forfeiture is sought to be based.   We are of opinion that the action of the insurance company, through its adjuster who had authority to represent it, in requiring the insured to submit to a sworn examination under the stipulations in the policy, clearly recognized the validity of the policy, and that it cannot now be heard to assert its invalidity upon the ground of forfeiture known then to exist.   Titus v. Insurance Co., 81 N. Y., 418; Roberts v. Insurance Co., 35 S. W. Rep., 955.

We do not deem it necessary to discuss the other acts of the agents of the insurance company urged by defendants in error as constituting a waiver of the iron safe clause.

We find no error in the judgment of the court below, and it is therefore affirmed.

*Affirmed.*