MERCHANTS' & BANKERS' FIRE UN-
DERWRITERS v. BROOKS.
(No. 5618.)

(Court of Civil Appeals of Texas. Austin.
April 19, 1916. On Motion for Re-
hearing, June 7, 1916.)

1. INSURANCE ☞134(1)—POLICY—IRON-SAFE
CLAUSE.
Where policy, which did not, on its face, de-
scribe the goods insured, but contained a blank
for such description to be pasted in the face of
the policy, was inclosed in an envelope and sent
to the insured, together with a paper containing
an iron-safe clause and a description of the
goods, the paper containing the iron-safe clause
was not a part of the policy.
[Ed. Note.—For other cases, see Insurance,
Cent. Dig. §§ 214, 215, 217; Dec. Dig. ☞
134(1).]

2. INSURANCE ☞136(5) — IRON-SAFE CLAUSE
—KNOWLEDGE OF INSURED.
The fact that insured did not know that
there was to be an iron-safe clause in the policy
would be immaterial, if it was in fact a part
of the policy accepted by him.
[Ed. Note.—For other cases, see Insurance,
Cent. Dig. §§ 222–224, 229, 230; Dec. Dig. ☞
136(5).]

3. INSURANCE ☞133(1)—CONTRACT AND DE-
SCRIPTION OF PROPERTY.
Where an application for a policy on furni-
ture, etc., signed by insured, containing a full
description of the goods insured, was attached to
the policy and referred to in the face thereof,
and made a part of it, the fact that the policy
did not describe the goods insured, but contained
a blank for such description to be pasted in,
and that an iron-safe clause, which, together
with a description of the goods, was contained
in a paper sent with the policy to the insured,
was not a part of the policy, did not prevent the
making of a contract of insurance.
[Ed. Note.—For other cases, see Insurance,
Cent. Dig. §§ 203, 211; Dec. Dig. ☞133(1).]

4. INSURANCE ☞495(1)—AMOUNT OF LOSS—
STATUTE.
Under Acts 31st Leg. (4th Called Sess.) c. 8,
§ 18, relating to the business of fire insurance,
the insured, under a policy known as an 80 per
cent. coinsurance clause, was a coinsurer enti-
tled to recover that percentage of the policy, less
the amount of his premium note and the amount
allowed by the court for expense of adjustment,
etc., with interest.
[Ed. Note.—For other cases, see Insurance,
Cent. Dig. §§ 1270–1272; Dec. Dig. ☞495(1).]

5. INSURANCE ☞558(1) —.PROOF OF LOSS —
WAIVER—TIME.
The insurer's waiver of formal proof of loss
was to be dated from the time of its examina-
tion of the insured.
[Ed. Note.—For other cases, see Insurance,
Cent. Dig. §§ 1382, 1383, 1389, 1390; Dec. Dig.
☞558(1).]

6. INSURANCE ☞328(2)—FIRE INSURANCE—
CHANGE IN OWNERSHIP.
Where an owner of furniture and a stock
of goods had sold a half interest therein to his
son, then 18 years of age, taking his note there-
for on which nothing was ever paid, and the
facts as to such transaction were stated to the
insurer's agent when he took the application for
the policy, and where such owner always re-
garded himself as the owner, the policy was not
void on account of a change in ownership.
[Ed. Note.—For other cases, see Insurance,
Cent. Dig. § 795: Dec. Dig. ☞328(2).]

7. INSURANCE ☞186(1)—PAYMENT OF PRE-
MIUM—PAID-UP INSURANCE.
While there can be no such thing as a paid-
up fire insurance policy in the sense that under
the terms of such policy either party may have
the policy canceled, yet where the court deduct-
ed from the amount awarded to the insured the
full amount of his premium note, including the
amount due on a warehouse which was not de-
stroyed, insured would hold a policy for the
amount insured on the warehouse during the
time for which the premium had been paid.
[Ed. Note.—For other cases, see Insurance,
Cent. Dig. §§ 396–398; Dec. Dig. ☞186(1).]

8. INSURANCE ☞573—AMOUNT OF RECOVERY
—EXPENSES OF ADJUSTMENT.
In an action on a fire insurance policy, cov-
ering furniture, groceries, and a stock of goods,
agents of the insurer, who attempted to make an
adjustment and who were being paid by the in-
surer a salary for their time without reference
to such adjustment, were properly disallowed
their claim of $10 per day as expenses of ad-
justment.
[Ed. Note.—For other cases, see Insurance,
Cent. Dig. § 1427; Dec. Dig. ☞573.]

Error from District Court, Hamilton
County.

---

Suit by W. C. Brooks against the Merchants' & Bankers' Fire Underwriters. Judgment for plaintiff, and defendant brings error. Reformed and affirmed.

Thompson, Knight, Baker & Harris and Will C. Thompson, all of Dallas, for plaintiff in error. Dewey Langford and H. E. Chesley, both of Hamilton, for defendant in error.

## Findings of Fact.

JENKINS, J. Plaintiff in error issued a policy to defendant in error upon his goods, wares, and merchandise and warehouse, in the town of Evant, on November 9, 1912, for a period of 6 years, for which defendant in error executed his premium note for $225. The goods insured were destroyed by fire October 28, 1913; the warehouse was not burned. The policy was for $200 on the furniture, $1,200 on dry goods and clothing, $600 on groceries and $500 on the warehouse. The case was tried before the court without a jury, and judgment was rendered for defendant in error for $2,000 on the dry goods, groceries, and furniture, less $225 premium note and $65.73 for expenses incurred in attempting to adjust the loss, leaving the net amount of the judgment in favor of defendant in error $1,709.27, with interest at the rate of 6 per cent. from February 13, 1914. The court filed findings of fact, which were, in substance, that the alleged iron-safe clause was not a part of the policy; that if the iron-safe clause was a part of the policy, it had been waived by plaintiff in error; that the agent who obtained the policy knew all about defendant in error's title thereto; that three-fourths of the value of the dry goods, groceries, and furniture destroyed by fire exceeded the amount of the insurance. The undisputed evidence showed that the value of the goods destroyed by fire which were covered by the policy was: Furniture, $603; dry goods, etc., $4,412; groceries, $1,200—aggregating $6,215; and that the same were destroyed by fire, as found by the court. We approve the findings of fact by the court, except as to the matter of waiver, upon which we make no finding.

## Opinion.

[1, 2] Upon the trial hereof defendant in error offered in evidence the policy, which did not contain the iron-safe clause, and did not, upon its face, describe the goods insured, a blank being left for such description to be pasted in the face of the policy. The evidence showed that a paper containing the iron-safe clause and a description of the goods was inclosed in the same envelope in which the policy was sent to defendant in error.

Under appropriate assignments of error, the plaintiff in error contends: First, that this paper was a part of the policy. If this contention is correct, the defendant in error was not entitled to judgment, unless this clause was waived, inasmuch as the undisputed evidence shows that the iron-safe clause was not complied with, in that certain books, required therein to be kept in an iron safe, were burned in the fire. The defendant in error did not know that there was to be an iron-safe clause in his policy, but this would make no difference if it was in fact a part of the policy which was accepted by him. We think the court was correct in concluding that the paper containing the iron-safe clause was not a part of the policy. Ins. Co. v. Ray, 138 S. W. 1123; Ins. Co. v. O'Neal, 14 Tex. Civ. App. 516, 38 S. W. 64.

[3] Plaintiff in error's second proposition is that if the iron-safe clause was not a part of the policy there was no contract of insurance, inasmuch as the property insured was not described in the face of the policy. An application for the policy was signed by defendant in error, which contained a full description of the goods insured. This application was attached to the policy, and was referred to in the face thereof and made a part of the same. For this reason we overrule plaintiff in error's contention that the policy is void for want of description of the goods insured. Ins. Co. v. Bowen, 102 S. W. 166; Ins. Co. v. Daniel, 33 S. W. 550. Plaintiff in error cites a number of cases in which there is dicta to the effect that, if the iron-safe clause was not a part of the policy, there was no contract of insurance, but in these cases the iron-safe clause was pasted at the appropriate place in the face of the policy, and was a part of the same. Couch v. Insurance Co., 32 Tex. Civ. App. 44, 73 S. W. 1077; Allred v. Ins. Co., 37 S. W. 95; Ins. Co. v. Center, 33 S. W. 555; Kelley Goodfellow v. Ins. Co., 8 Tex. Civ. App. 227, 28 S. W. 1027; Ins. Co. v. Cary, 10 Tex. Civ. App. 300, 31 S. W. 321; Drug Store v. Ins. Co., 44 S. W. 24.

Holding, as we do, that the iron-safe clause was no part of the policy, it is not necessary that we should pass upon the assignments of error with reference to the alleged waiver of this clause.

[4] Plaintiff in error assigns error as to the amount of the judgment rendered. The policy contained what is known as the 80 per cent. coinsurance clause. Under this clause of the policy the defendant in error was a co-insurer to the extent that his recovery should have been for $1,595.95, less $225, the amount of the premium note, and $65.73, allowed by the court for expenses of adjustment, aggregating $290.73, leaving $1,305.22 as the net amount for which defendant in error was entitled to judgment, with interest from March 13, 1914. Gen. Laws, 31st Leg. c. 8, § 18, p. 133.

[5] There was no formal proof of loss in this case, and evidently the court construed

the waiver of proof of loss as occurring when Baker, the agent of the company, visited levant December 12, 1912. We think, however, waiver of the proof of loss should be dated from the time of the examination of defendant in error at Hamilton, which occurred March 3, 1914.

[6] As to the assignments of error that the policy is void on account of the change in ownership, the evidence shows that there was no change in ownership after the issuance of the policy. Prior to the issuance of the policy, defendant in error had sold to his son, who was 18 years of age, a half interest in the business, taking his note therefor. Nothing was paid on this transaction at the time, and nothing has been paid thereon since. The facts as to this transaction were stated to the agent, who took the application for the policy at the time the same was made. Defendant in error testified as to the facts of this transfer, and further testified that he had always regarded himself as the owner of the property. Under these facts we hold that the policy was not void on the issue of ownership. Ins. Co. v. Chapman, 132 S. W. 854; Insurance Co. v. Smith, 135 S. W. 689, and authorities there cited.

[7] The court in its conclusions of law stated as follows:

"I conclude, further, that the defendant is not entitled to a return of the policy, but that this is a valid paid-up policy on plaintiff's warehouse, insuring the same in the sum of $500 until the 5th of November, 1918."

Plaintiff in error contends that there can be no such thing as a paid-up fire insurance policy; and this is true in the sense that under the terms of this, and perhaps all other insurance policies, either party might have the policy canceled. Inasmuch as the court deducted from the judgment to which it held that plaintiff was entitled to recover the full amount of the premium note, including the amount due on the warehouse which was not destroyed, and inasmuch as we have done the same in the judgment here rendered, the defendant in error holds a policy for $500 on his warehouse, the premium on which has been paid until November 5, 1918, and the same will remain a subsisting policy, unless canceled by one party or the other in accordance with the terms thereof.

[8] We overrule plaintiff in error's contention that the court did not allow a sufficient amount for expenses of adjustment. It might be, as suggested by defendant in error, that inasmuch as the losses were not in fact adjusted, plaintiff in error would not be entitled to any expenses in attempting to adjust the loss. However, the court allowed all the expenses so incurred, except the claim of $10 a day of the agents of the company who attempted to make the adjustment. These agents were paid by the company a salary for their time, without reference to the attempted adjustment, and we think the court was correct in not allowing the $10 a day claimed for such agents.

For the reasons stated, the judgment of the trial court herein is reformed, so that the defendant in error shall have judgment for the sum of $1,305.22, with interest from March 13, 1914, and that defendant in error recover the costs incurred on this appeal. As thus reformed, the judgment of the trial is affirmed.

Reformed and affirmed.

Opinion on Motion for Rehearing.

We fell into error in decreeing that the judgment herein should bear interest from March 13, 1914. The interest should begin on May 5, 1914. To the extent of correcting the judgment as herein indicated, the motion for rehearing is granted, and the judgment is corrected, so that it shall bear interest from May 5, 1914. In all other respects the motion for rehearing is overruled.

Granted in part and in part overruled.