. THOMPSON SAVINGS BANK V. JOHN S. GREGORY AND WIFE.

Decided October 17, 1904.

**Loan—Homestead Exemption—Fraud—Estoppel.**

Parties not in actual possession subjecting property to homestead use held estopped, by fraudulent representations as to the status of the land upon which a loan was secured, from setting up homestead claim as against parties acting on such representations in ignorance of the homestead claim.

Error from the District Court of Galveston. Tried below before Hon. Robt. G. Street.

*R. H. & Alice S. Tiernan,* for plaintiff in error.

*J. S. Gregory* and *Geo. E. Mann,* for defendants in error.

GILL, ASSOCIATE JUSTICE.—This suit was brought by the Thompson Savings Bank, incorporated, against J. S. Gregory and E. Mary Gregory, his wife, and J. H. McMurtry, of Lincoln, Neb., to recover $8000 and to foreclose a lien therefor upon 700 acres of land on Bolivar Peninsula, in Galveston County, alleged to be the property of Gregory.

J. S. Gregory answered pleading a discharge in bankruptcy, and both he and his wife set up a homestead claim to 200 acres thereof, and asked judgment exempting it from the lien. McMurtry did not answer.

Plaintiff in due order of pleading denied the validity of the homestead claim, and further averred that the Gregorys were estopped to urge that defense for the reason that at the time the loan was made they and some of their children were residing in Lincoln, Neb., on property which had been their home for years. That defendant J. S. Gregory had voted there in 1892 and 1894 and that both he and his wife had joined in a written application for the loan duly sworn to, the recitals of which estopped them from urging the homestead claim.

Judgment by default was rendered against McMurtry and the lien was foreclosed against 500 acres of the land, no personal judgment being rendered against J. S. Gregory. The plea of homestead was sustained as to 200 acres.

Plaintiff has appealed from the judgment sustaining the homestead claim and here insists that on the undisputed facts he is entitled to judgment foreclosing his lien thereon.

The following facts appear without dispute: J. S. Gregory moved to Lincoln, Neb., in 1863, and he and his wife lived there until 1889. They acquired a home there and lived in their residence at 1740 K Street in that city for more than twenty years before their removal to Texas. In 1889 J. S. Gregory came to Texas and purchased the 700 acres in controversy, intending to move to Texas and make his home thereon. In 1891 he moved his family and household effects to Texas and lived on the land in question until 1892, in the meantime making

frequent visits to Lincoln. and continuing in the employment of the Union Pacific Railroad Company, as its attorney at that point. His wife accompanied him more than once or twice on these trips. In the spring of 1892 Gregory, his wife and three younger children went to Lincoln, re-establishing themselves in their former residence, and sent the children to school there during that season. Gregory continued to represent the Union Pacific Railroad at that point and registered and voted in Lincoln in 1892 and 1894. They remained there during the summer months. On April 7, 1892, while he and his wife and three children were in Lincoln, as before, stated, J. S. Gregory and wife signed the following application for the loan which they swore to on April 18th and delivered to J. H. McMurtry, to whom it was made:

"This tract of land is gently rolling prairie conformation, rich alluvial sandy loam soil. Has no timber; all cultivatable land except sandy ridge of about 200 feet width on gulf shore, and fresh water lake of ten acres near center of tract. Has a frontage of about half mile on gulf, which is a splendid driveway, fully equal to any on Long Island, N. Y. Galveston City lies in full view, including jetty. Land runs back to Galveston Bay, inclosing there riparian right to several hundred acres of oyster bed, now well stocked with oyster. On bay shore has the most extensive 'shell bank' on the bay. This shell bank alone is of more value than the original cost of the land. Orchard now contains orange, lemon, guava, banana, pineapple, fig, nectarine, apricot, and various other fruits in successful growth. Fences are all new and well constructed. Buildings are at present small, temporary, and of not much value. 'Alfalfa' has proved successful here and it is intended to plant 200 acres of it this year in addition to the meadow (the only one in the country) now growing. Vineyard has 2500 'California' raisin grapes now growing. (Signed)    J. S. Gregory."

"I, the undersigned, John S. Gregory, of Lincoln (postoffice), County of Lancaster, State ———, do hereby make application for a loan of eight thousand dollars for a term of three years, payable ———, and interest to be paid semiannually and both principal and interest to be paid at such place as the lender may direct, secured by first mortgage on the real estate hereinafter described in Bolivar Precinct, Galveston County, Texas.

"I agree that the said mortgage shall be recorded at my expense made a first lien before any of the borrowed money shall be made to me. If this application is accepted I agree to take the money within six months. I offer as security a mortgage on the following described real estate:

"Seven hundred (700) acres of land of A. Van Ostrand survey, Bolivar, containing in all 700 acres of government survey.

"My farm is improved as follows:

"325 acres under cultivation; 300 acres upland; 200 acres under fence; no acres timber; lake of 10 acres unfit for cultivation; 400. acres bottom land; 490 acres pasture; 20 acres orchard; ——— grove.

"Stock owned and kept on said land:

"12 mules and work horses; —— colts; 2 cows; —— steers; —— calves; —— oxen; 40 hogs; —— sheep.

"Product of land last year on —— acres then under cultivation. (Be explicit with this, making it tally with the land under cultivation.) —— acres corn, —— bushels; —— acres wheat, —— bushels; —— acres oats, —— bushels. This is a truck and fruit farm, best and largest in Galveston County.

"We now have growing 100,000 cabbages; balance of garden in general market garden and fruit.

"Describe fence; if hedge, state age. All tight board and wire hog-proof, cypress posts.

"What is the cash value of the land per acre, exclusive of buildings? $40. What agricultural implements? Have a general supply.

"What is the value of the house? $300. Barn? $100. Outbuildings? $——.

"When built? 1890. Give size and description. One has three rooms, and one two rooms. At present we have leased buildings on adjoining plantation.

"On what part of farm are buildings located? South.

"When did you buy the property? 1889. What did you pay for it? $3500. What improvements have you made since? $4500. What incumbrance now upon it? $1500.

"Can all the incumbrances on the premises be paid now? Yes.

"What amount of fire insurance will you assign to the lender? In what company are you insured? Did you give note for the insurance? If so, is it paid?

"For what purpose is the money wanted? Improvements on the farm.

"By whom and for what purpose are the property and buildings occupied or used? Farm hands.

"If rented, for what time, what rental and what purpose?

"What other real estate do you own? $80,000. What incumbrance, if any, upon it? $25,000.

"Distance to railway station? 8 miles. Name of station? Galveston. Its population? 35,000.

"Name of railroad. Several.

"Distance to church? Two miles. Schoolhouse? Two miles. Mill? No.

"What have improved farms sold for in the neighborhood during the past year? Sold last year for $40.

"If none have been sold, what are they held at? $35 to $50 of equal quality.

"What is wild land worth in your vicinity? $35.

"What is your business or occupation? Attorney of Union Pacific Railroad.

"Give wife's name in full; if title is in wife's name, give husband's full name. E. Mary Gregory.

"I do here state, under oath, that I am in peaceable possession of the premises described, and that my title has never ·been questioned; that there are no judgments unsatisfied, or suits pending against me, in any court of record of the State or of the United States; that there are no unrecorded deeds or mortgages, and that I am neither principal nor surety on any bond which is by law a lien upon said premises, except such as are shown by the abstract submitted, and that these shall be removed before the loan is completed.

"We understand the loan is granted on the representations ·herein made by us as to said premises and the title to the same, and we do solemnly declare that the said representations are true in every particular. That the lender may be fully satisfied of the sufficiency of the security offered, I hereby request that the property be examined by such persons as the lender may direct, and I agree to furnish such examiner suitable conveyance from such convenient railroad station as he may designate to the premises and return. I also request the lender to cause to be prepared a mortgage and note or notes, as the case may be, of approved form, for which I agree to pay a reasonable fee to the person preparing the same.

"In witness whereof, I have hereunto set my hand and seal this 7th day of April, 1892. Applicant (Sgd) John S. Gregory, age 58 years. Applicant's wife, E. Mary Gregory, age 55 years. Subscribed and sworn to before me this 18th day of April, 1892. T. H. Hatch, Notary Public."

Thereafter on August 16, 1892, J. S. Gregory executed and delivered to McMurtry the notes and mortgage contemplated by the application, he alone signing them. They were indorsed by McMurtry to plaintiff, who paid $8000 therefor, without any knowledge that the facts stated in the application were not true, but upon the faith of the application and the belief that the parties to the instrument were solvent.

McMurtry had formerly been· a partner of J. S. Gregory in the real estate business in Lincoln, and it is charged but not made to appear that McMurtry conspired with Gregory to deceive plaintiff as to the status of the land and thus procure the money on the faith of the application. Neither McMurtry nor any of the officers of plaintiff ever saw the land or knew anything as to the character of its occupancy, other than what was disclosed by the papers evidencing the transaction. · In negotiating the sale of the notes and collateral McMurtry exhibited the application, notes and mortgage to plaintiff.

Mrs. Gregory admits that she joined her husband in procuring the loan and that in furtherance of that object she signed the application set out above.

On the question of homestead she and her husband both testify that they lived on the premises as their home prior to the securing of the loan. That it was in fact their homestead, and this and other testimony amply sustain the verdict to the effect that they had subjected it to homestead uses. The application truly discloses the character of the

houses on the land at the time, and it is a fact that at the time a part of the premises were under cultivation as stated therein. A son of plaintiff was managing the farm in his father's absence and the evidence presented the issue of abandonment vel non.

After the money was procured Gregory and family returned to Texas. He built a better residence thereon and he and his family occupied it as their home until the storm of September 8, 1900, which destroyed all his improvements.

No cross-assignments are presented in such form as to require our notice, hence the only question to be determined is that presented by appellant's assignment above stated. We are of opinion it should be sustained.

This is the third appeal of this case, the former judgments having been reversed on error of procedure committed by the trial court.

It seems to be well settled that where a married man is in actual possession of property, using the same as a home, no representations of himself and his wife will defeat the exemption, it being held that those dealing with them can not ignore the notice conveyed by its actual use as such. Texas Land and Loan Co. v. Blalock, 76 Texas, 85.

But it is equally well settled that where claimants are not in actual possession subjecting the property to homestead use, representations amounting to fraud will estop them from setting up the claim as against parties acting on such representations in ignorance of the homestead claim. Thompson Savings Bank v. Gregory, 59 S. W., 622; Mortgage Co. v. Norton, 71 Texas, 683; Moerlein v. Mortgage Co. 9 Texas Civ. App., 415.

In this case the lenders disclosed a knowledge of the homestead laws of this State and made particular inquiry as to the character of occupancy. The claimants were at that time in their old home in Nebraska, where they had lived for years. They were sending their children to the local school and Gregory was continuing in his employment as attorney for a local road. In answer to a question he so stated. The application represented the signers to be of Lincoln, Lancaster County, and stated explicitly that the houses on the premises were occupied by farm hands, and either standing alone or read in the light of the surrounding circumstances the statements in the application were sufficient to mislead the most wise and prudent business man. Upon the faith of those representations defendants knew and so stated in the application that the loan was made and the security accepted. They also knew that the other parties to the transaction were ignorant of the facts and resided a long distance from the land.

In the light of the facts we think there is room for but one opinion. We believe estoppel was established beyond dispute, and so believing it is the order of this court that the judgment of the trial court be reversed and judgment here rendered foreclosing plaintiff's lien upon the entire tract.

*Reversed and rendered.*

Writ of error refused.