FARMERS' STATE BANK OF QUANAH v. FARMER et al.

(Court of Civil Appeals of Texas. Amarillo. May 10, 1913.)

1. APPEAL AND ERROR (§ 704*) — RECORD — WAIVER OF ERROR.

Where the record on appeal fails to show that defendant's motion for findings of fact and conclusions of law was called to the attention of the trial court, and showed no bill of exceptions reserved to the failure of the court to file findings and conclusions, the error if any must be deemed waived.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2900, 2939–2941; Dec. Dig. § 704.*]

2. APPEAL AND ERROR (§ 1071*)—REVIEW— HARMLESS ERROR——FAILURE TO FILE FINDINGS AND CONCLUSIONS.

Where full statements of facts are filed the failure of the lower court to file findings and conclusions must be disregarded in the absence

of an affirmative showing that appellant was prejudiced by such failure.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. § 1071.*]

3. APPEAL AND ERROR (§ 704*)—AFFIRMANCE—ABSENCE OF FINDING AND CONCLUSIONS.

In the absence of findings of·fact and conclusions of law, a judgment must be affirmed if sustainable on any ground.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2900, 2939–2941; Dec. Dig. § 704.*]

4. DEEDS (§ 68*) — VALIDITY — CAPACITY OF GRANTOR.

To have the capacity to execute a valid conveyance the grantor must not only have the ability to transact the ordinary affairs of life and to understand their nature and effect, but also to exercise his or her will in relation thereto.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 149–155; Dec. Dig. § 68.*]

5. MORTGAGES (§ 86*) — VALIDITY — MENTAL CAPACITY—EVIDENCE.

In an action where a wife contested the validity of a deed of trust, evidence *held* sufficient to sustain a finding that at the time of the execution thereof she was mentally incompetent.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1350, 1355, 1364; Dec. Dig. § 86.*]

6. HOMESTEAD (§ 122*) — INCUMBRANCE — ESTOPPEL TO DENY VALIDITY.

Where a married man is in actual possession of property, using the same as a business homestead, no representations made, either by him or his wife, to a mortgagee will defeat the constitutional exemption, for those dealing with them cannot ignore the notice conveyed by the actual use of the property.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 220–222; Dec. Dig. § 122.*]

7. HOMESTEAD (§ 122*)—ESTOPPEL TO CLAIM—DEEDS OF TRUST.

The mere statement or declaration in a deed of trust that the land covered by it was not a homestead or business homestead will not estop the grantors from afterwards asserting it to be such.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 220–222; Dec. Dig. § 122.*]

8. HUSBAND AND WIFE (§ 254*)—COMMUNITY PROPERTY—WIFE'S SEPARATE PROPERTY.

Where property is purchased entirely on credit it cannot become the wife's separate property; a wife's equity arising from the actual investment of her separate property. Therefore property purchased on credit for a business carried on by a husband on the wife's property and paid for out of the proceeds of such business is community and not separate property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 897–899; Dec. Dig. § 254.*]

9. FRAUDULENT CONVEYANCES (§ 52*)—PROPERTY TRANSFERRED—RIGHT OF WIFE TO SEPARATE PROPERTY.

That a wife allowed her son to manage her separate property and conduct the business in his name will not deprive her of any right or equity which she might have, even though the arrangement was fraudulent.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 118–127; Dec. Dig. § 52.*]

10. HOMESTEAD (§ 161*) — BUSINESS HOMESTEAD—ABANDONMENT.

That a husband intended to sell out a livery business belonging to his wife and move to another country will not constitute abandonment of the business homestead so long as he was actually in possession thereof, using and·occupying it as such.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 312–314; Dec. Dig. § 161.*]

Appeal from District Court, Cottle County; Jo. A. P. Dickson, Judge.

Suit by Mrs. Eula Farmer and another against the Farmers' State Bank of Quanah. From judgment for plaintiffs, defendant appeals. Affirmed.

W. T. Perkins, ·of Quanah, for appellant. J. A. Templeton, of Ft. Worth, for appellees.

HALL, J. This was a suit by appellee Mrs. Eula Farmer joined by her husband, R. A. Farmer, to enjoin a sale under and to cancel a certain deed of trust executed by appellees on May 16, 1911, to secure a note in favor of appellant bank in the sum of $662.50. The trust deed conveyed lots 1, 2 and 3 in block No. 4, in the town of Paducah, in Cottle county. Appellees allege in their petition that at the date of the execution of the deed of trust and for a long time prior thereto, the unincumbered lots were the separate property of appellee Mrs. Eula Farmer; that said property was then being used and occupied by appellee R. A. Farmer as a livery barn, feed stable, etc., which said property had been improved by appellees for that purpose; that the same was then the business homestead of appellee R. A. Farmer and not subject to incumbrance by deed of trust, of all of which appellant had full knowledge; that with knowledge of such facts, appellant induced said R. A. Farmer, and through him the said Eula Farmer, to execute said deed of trust; that the debt secured thereby was the separate and individual debt of said R. A. Farmer and neither the said Eula Farmer nor her property was in any manner liable therefor; that at the time of the execution of said deed of trust said Eula Farmer had been suffering from a malady known as pellagra, and her mind had been affected therefrom to such an extent as to render her incapable of transacting any business; that she did not know what she was doing when she executed the said deed of trust and did not realize that she was executing a deed of trust on her property to secure the debt of R. A. Farmer; that no part of the consideration for which said note was executed was used for the benefit of said Eula Farmer or of her separate property; that she has never in any way ratified said deed of trust and because of said facts appellees allege that said deed of trust is and has always been void.

Appellant answered by general denial and specially that the said deed of trust and note were given by appellees to secure a loan made by appellant to appellees on said 16th day of May, 1911; that appellees were not using or occupying said property for any

purpose and never had used or occupied said property for any purpose, but that the same was then and always had been used and occupied by other persons than appellee; that as an inducement to appellant to loan appellees said money appellees represented to appellant that said property was community property of appellees; that they were not using or occupying same for any purpose and had no interest in the business then being conducted on said lots; that they never had any interest in said business and had specially disclaimed any homestead interest therein; that at the date of the execution of said deed of trust, a firm by the name of Day & Anderson owned and conducted the business carried on in said property and had so owned and conducted said business for a month or so prior thereto. Appellant further alleged that the money so borrowed from appellant, evidenced by said note and secured by said deed of trust, was used to pay off and discharge a lien upon the property owned and claimed by appellees as the separate property of Mrs. Eula Farmer; that appellant relied upon said representations made by the appellees and had no notice or knowledge that the same were not true and that appellees were estopped to maintain said suit without first tendering to appellant said money borrowed. Appellant further alleged that if appellees had ever used said lots as a place to carry on any business, the same had been abandoned by them prior to the execution of said deed of trust and that appellee R. A. Farmer, who was the head of the family, was then engaged in another and different business many miles from the town of Paducah and in a different county.

As constituting appellee Mrs. Eula Farmer's title to the lot in question, the following evidence was introduced: (1) Deed from J. V. Guyton and wife to Henry Farmer, dated October 1, 1907, and filed for record the same day. Mrs. Guyton was the daughter of appellee, and Henry Farmer, the grantee, was their son. (2) Deed from Henry Farmer and wife to Mrs. Eula Farmer, dated Feb. 9, 1911, filed for record April 11, 1911. This deed does not recite that the consideration therefor was paid by the said Mrs. Eula Farmer out of her own separate funds and does not purport to convey the property to her for her own separate use and benefit. It appears from the statement of facts that, some time after this deed was recorded, appellees caused the same to be interlined so as to recite that the consideration therefor was paid by Mrs. Eula Farmer out of her own separate funds and conveying the property to her for her separate use and benefit. After this interlineation, the deed was never acknowledged by the grantors but was refiled for record June 24, 1911, and again recorded. Henry Farmer, the son of appellees, testified that some time in May, 1911, while he was living in Wise county, he received a letter from his mother, written in her own handwriting, advising him that the deed made in February to her did not convey the property to her for her separate benefit and requested him to make a new deed that did so recite. He stated that he complied with this request, but it seems that this new deed was never recorded and was not introduced in evidence.

[1, 2] One matter raised by appellant and upon which it relied for a reversal is the failure of the court to comply with the written request of appellant to file findings of fact and conclusions of law. The record fails to show by bill of exceptions or otherwise that appellant's motion was ever called to the attention of the trial judge or that he ever knew such a motion or request had been filed with the clerk. The record does not disclose the fact if appellant ever reserved any bill of exception to the failure of the judge to file his findings and conclusions. This must be considered as a waiver of the motion and of any error resulting therefrom. It also appears that a full statement of facts had been filed, and in the absence of an affirmative showing on the part of appellant that it has been prejudiced by such failure, the error complained of must be disregarded.

[3] The two principal questions involved in this appeal are: (1) Was the property covered by the deed of trust at the time of the execution of such deed plaintiff's business homestead? (2) Were the lots the separate property of Mrs. Eula Farmer, and was she at the time of the execution of the said trust deed mentally incapacitated to execute the same, and, if so, has she since ratified it? If there is evidence in the record to warrant the court in rendering its judgment in favor of appellees upon either of these issues, the judgment must be sustained. Spalding v. Aldridge, 50 Tex. Civ. App. 230, 110 S. W. 560; Appel v. Childress, 53 Tex. Civ. App. 607, 116 S. W. 129; Harris v. Cattle Co., 84 Tex. 674, 19 S. W. 869; Tuggle v. Wakefield, 30 Tex. Civ. App. 393, 70 S. W. 555.

[4, 5] It will not be necessary for us to consider all of the various propositions under the numerous assignments of error presenting the case for review. Appellant's first contention is that Mrs. Eula Farmer was not, as claimed by appellees, mentally incapacitated at the time the trust deed was executed and that the evidence is not sufficient to sustain the trial judgment, if the judgment is based upon that ground. We have carefully read the entire statement of facts and do not hesitate to say that the evidence, taken as a whole, is extremely weak. However, Mrs. Guyton, the daughter of Mrs. Eula Farmer, testified that she was with her mother all through May, 1911, and was with her on May 16th, when the instrument was executed; that her condition was very bad all through that month; that she did not have any strength; that they could not hear her call unless they were close to her; that she was not capable of doing anything at

all and the witness further said: "I think the condition of her mind was bad at that time. I do not believe that she could carry on a connected conversation. Her nerves were wrecked; she had nervous spells and at such times she would gasp for breath. I did not try to talk business with her during that time because she could not have talked it. We did not carry on any conversation in the room where she was. We did not bother her in any way at all, because any noise made her nervous and we could not do it on that account." Mrs. Diffy, a resident of Dallas and a sister of Mrs. Eula Farmer, testifying as to the latter's condition in May, said: "When I got there I did not think she would live a week. She was confined to her bed. We had to keep everything just as quiet as could be. We could not carry on any conversation at all where she was. She was in that condition when I came and when I left. She did not eat at all. She remained in bed all the time and lived on hypodermics. She was a perfect wreck. I tried to talk to her and find out about her business matters, but I could not because she could not talk to me. She could not give me a connected detail about anything I asked her about. She could not have understood anything about the character of a deed of trust or anything of that kind. She could not have done anything; at that time I did not think she would live a month." This testimony is followed by the testimony of Mrs. Eula Farmer, who stated that she did not remember anything about signing the trust deed in question nor did she remember having acknowledged it; that since she had begun to improve she could realize that her mind was not what it ought to have been; that she was not in such condition when the deed was executed as to enable her to transact any business matter. She is corroborated by her husband, R. A. Farmer. As we understand the rule bearing upon this issue, it seems to be that the test of the capacity of one to execute a valid conveyance is that such individual must have the ability, not only to transact the ordinary affairs of life, and to understand their nature and effect, but also to exercise his or her will in relation thereto. Herndon v. Vick, 18 Tex. Civ. App. 583, 45 S. W. 852; 22 Cyc. 1170. A number of strong rebutting facts crop out in the record, which if submitted to us primarily in connection with the above-quoted testimony leads us to the conclusion that we would have held adversely to appellees upon this issue. However, in the condition of the record, we would not be justified in reversing the judgment since the above-quoted testimony is in the light of the adjudicated cases sufficient to sustain the court's finding, provided the rebutting facts are excluded from consideration.

Upon the issue as to whether or not the three lots in question, with the improvements thereon, constituted the business homestead of appellees, there is this testimony in the record: The property had been conveyed by Mrs. Guyton to her brother, Henry Farmer, to be held in trust by him for their mother. Henry Farmer had erected the livery stable upon the lots, acquired the necessary horses, mules, buggies, and other vehicles for the purpose of conducting a livery stable, and, assuming charge thereof, had been carrying on the business for several years. He left Paducah in February, 1911, when his father, appellee R. A. Farmer, who it seems had been working under Henry's direction as an assistant in the conduct of the business, took charge of the stable and continued to run it for himself until he contracted to sell the personal property to Day & Anderson in April, 1911. This contract of sale to Day & Anderson was made about the middle of the month of April, in consideration of which R. A. Farmer accepted a deed to 1700 acres of land in Hardeman county, in which Day & Anderson claimed to have some sort of an equity. R. A. Farmer testified on this point: "I had no other business. I devoted my time and attention to the livery stable business up to the time that we disposed of it. I was running that business at the time this deed of trust was executed on the 16th day of May. I was getting the proceeds of the business at that time. It was turned over to the purchasers on the 17th or 18th of May. Mason Harwell was here on the ground when it was executed and the business was turned over to him on the next morning after it was executed. I was running the business on the day the deed of trust was executed. I was running it for myself and was getting the proceeds." The record further discloses that prior to the time Henry Farmer left Paducah the business had been conducted in his name although it in fact actually belonged to Mrs. Farmer. It appears that the land for which R. A. Farmer contracted to exchange the horses, vehicles, and other personal property was at the time of that agreement leased to one Richardson, and Day & Anderson were to secure the cancellation of that lease so they could deliver possession of the land to R. A. Farmer and by the terms of the agreement Farmer was to retain possession of the livery business until possession of the land was delivered to him. It further appears that this lease was never canceled and that Farmer never obtained possession of the land. However, Day & Anderson sold the personal property, consisting of horses, buggies, etc., which they were to get for the land, to one Hirstein, who was then the cashier of the appellant bank; whereupon Hirstein sold a half interest therein to Mason Harwell, who was president of the bank. On this point R. A. Farmer further testified: "The reason I turned the rolling stock over to them before they turned the pasture over to me was because they said they had the release from Richardson, but when we got

over there to Quanah they did not have it and I never did get possession of it. I never was in possession of the pasture that I traded the rolling stock for. I was to keep the rolling stock and run the livery stable and get the proceeds until the time they turned the pasture over to me. When Harwell came over here to Paducah I turned the horses, rolling stock, and stable over to him but I never did get possession of the pasture. I got the proceeds of the stable on May 16th and Harwell and Hirstein took possession the next morning." It further appears from the evidence that part of the loan which is represented by the note sought to be canceled was used in discharging a lien held by a corporation engaged in the manufacture and sale of vehicles and designated in the record as "Emory-McLean people." It appears that while Henry Farmer was conducting the business he purchased vehicles to the amount of $1,100 from said corporation, of which amount he had paid from the proceeds of the business about $600. The money borrowed was applied to the extinguishment of the balance due upon this debt and a remainder of $33 was, by agreement between R. A. Farmer and Mason Harwell, paid for insurance upon the personal property, the policy being made payable to appellant bank as its interests might appear.

[6] It seems to be well settled that where a married man is in actual possession of property, using the same as a home or as a business homestead, no representations made, either by him or his wife, will defeat the constitutional exemption. The reason given for such holding is that those dealing with them cannot ignore the notice conveyed by its actual use as such. Thompson Savings Bank v. Gregory, 36 Tex. Civ. App. 578, 82 S. W. 802; Dignowity v. Baumblatt, 38 Tex. 363, 85 S. W. 834; Jacobs-Bernheim & Co. v. Hawkins, 63 Tex. 1; Texas L. & L. Co. v. Blalock, 76 Tex. 85, 13 S. W. 12; Marble v. Marble, 52 Tex. Civ. App. 380, 114 S. W. 871; Archibald v. Jacobs, 69 Tex. 248, 6 S. W. 177; Freeman v. Hamblin, 1 Tex. Civ. App. 157, 21 S. W. 1019; Kempner v. Comer, 73 Tex. 196, 11 S. W. 194.

[7] It is further held that the mere statement or declaration in a deed of trust that the land covered by it was not a homestead would not estop the grantors from afterwards asserting it to be such. Crebbin v. Moseley, 74 S. W. 815; Hines v. Nelson, 24 S. W. 541; Thomas v. Williams, 50 Tex. 269.

[8] It is further contended by appellant that because money borrowed from appellant, and for which the note in question was executed, was used for the benefit of the separate estate of Mrs. Eula Farmer that appellees were not entitled to judgment canceling the trust deed upon the ground that said appellee Mrs. Farmer was mentally incapacitated to execute it without first tendering to appellant the amount of money so borrowed. We cannot agree with appellant's contention that the money had been used for the benefit of Mrs. Eula Farmer's separate property. As was stated above, all but $33 of the amount borrowed was applied to the extinguishment of the debt and mortgage covering the vehicles purchased by Henry Farmer from the Emory-McLean people. The amount which had previously been paid upon this indebtedness had been realized in the conduct of the livery business and was therefore community property. This property had been purchased by Harwell and Hirstein, the president and cashier, respectively, of appellant bank, from Day & Anderson. This purchase by Harwell and Hirstein from Day & Anderson is shown by uncontroverted testimony to have been made on May 15th. No part of the loan was ever paid to Mrs. Farmer and it was clearly not used for the benefit of her separate property. It therefore becomes unnecessary for us to determine the question of law governing the duty of one mentally incapacitated to offer to refund before seeking cancellation of an instrument executed during the period of such mental incapacity, and the further question of want of notice and good faith on the part of the purchaser of such property. It is held in Harrison v. Mansur-Tibbetts Implement Co., 16 Tex. Civ. App. 630, 41 S. W. 842, that a wife cannot acquire land as separate property when it is purchased entirely on a credit. And Rainey, Justice, quoting from Judge Gaines, in Schuster v. Jewelry Co., 79 Tex. 179, 15 S. W. 259, 23 Am. St. Rep. 327, says: "The wife's equity in such cases arises from the actual investment of her separate money or the transfer of her separate property;" and further uses this language: "As there was no actual investment of Jimmy C. Harrison's separate money, or the transfer of her separate property for the land in controversy, we are of opinion that the same did not become her separate property," etc.

[9] A review of the entire record leads us to agree with appellees' counsel in the statement that R. A. Farmer is and has been since the date of his marriage to Mrs. Eula Farmer "a worthless, shiftless character." His energy and his talents seem to have been exhausted in an effort to avoid the payment of this debt and many others, and we may properly list him as a consumer rather than a producer. This condition, however, in no manner varies the rules of law governing the rights of his wife and the status of her separate property. The fact that Henry Farmer was allowed to manage the property and to conduct the business in his name would not deprive Mrs. Eula Farmer of any equity or right which she might have, even though the arrangement was fraudulent. King v. Harter, 70 Tex. 579, 8 S. W. 308; Archenhold & Co. v. Evans, 11 Tex. Civ. App. 138, 32 S. W. 795.

[10] And it is further well settled in this

state that even though it was the ultimate intention of R. A. Farmer to sell out the livery stable business, lots and all, and move to Mexico, such fact would not constitute an abandonment of the property as a business homestead so long as he was actually in possession thereof, using and occupying it as such. Newton v. Calhoun, 68 Tex. 451, 4 S. W. 645; Harbison v. Tennison, 38 S. W. 232.

Since the evidence upon either theory of the case might be held sufficient to support the judgment of the court, it must be and the same is hereby affirmed.