OVERTON v. COLORED KNIGHTS OF PYTHIAS et al. (No. 5432.)

(Court of Civil Appeals of Texas. Austin. Jan. 27, 1915.)

1. TRIAL ☞392—FINDINGS OF FACT—TIME FOR REQUEST.

Where plaintiff's request for the filing of conclusions of law and fact was not made until after the overruling of her motion for new trial, and there was no bill of exceptions or anything to show that the matter was called to the court's attention, the failure of the court to act on the motion was waived.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 916–919; Dec. Dig. ☞392.]

2. APPEAL AND ERROR ☞1071—HARMLESS ERROR—FAILURE TO FILE FINDINGS.

Where there was an agreed statement of facts in the record signed by the counsel for both parties and approved by the court, any error in the court's failure to file findings of fact and conclusions of law, as requested, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. ☞1071.]

3. INSURANCE ☞116—INSURABLE INTEREST—WHAT CONSTITUTES.

Illegitimate children, recognized and maintained by their putative father, have an insurable interest in his life.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 158–162; Dec. Dig. ☞116.]

Appeal from Travis County Court; Wm. Von Rosenberg, Judge.

Action by Annie Overton against the Colored Knights of Pythias, which impleaded against Mary Overton and another. From a judgment for the impleaded defendants, plaintiff appeals. Affirmed.

See, also, 163 S. W. 1053.

D. R. Pickens, of Austin, for appellant. Hart & Patterson, of Austin, for appellee.

RICE, J. Appellant, the surviving wife of Oscar Overton, brought this suit against the Colored Knights of Pythias to recover on a policy of insurance issued by it to said Oscar Overton, payable to Mary and George Overton, his children. The lodge answered, admitting its indebtedness, and tendered said money into court, but alleged that both appellant and said children were claiming it, and prayed that they be made parties, and

the court determine to whom it should belong; and Mary and George Overton also intervened in said suit, alleging that they were the children of said Oscar Overton, and that the policy was made payable to them, and prayed for judgment. A trial before the court without a jury resulted in a judgment in behalf of Mary and George Overton, from which appellant prosecutes this appeal.

The facts show that on the 1st of January, 1905, said Oscar Overton, then a member of said order, applied for and obtained insurance therein for the amount of $500, payable, in the event of his death, to Mary and George Overton, who were his illegitimate children. Several years thereafter he delivered said policy to said Mary Overton, stating that, in the event of his death, the proceeds thereof should belong to her and her brother George. It further appears that he supported and maintained said children, sending them to school, introducing them as his children, and having them enrolled as such, and they went by his name. They looked upon him as their father, and depended upon him for support and education, though they lived with their mother, Sallie McNeal, and their father frequently visited them at their mother's home. Annie Overton was his lawful wife, to whom he had been married some 20 years or more, and by whom he had no children. He died on the 26th of February, 1913, leaving a large farm, together with personal property.

A former writ of error was sued out in this case, and dismissed by this court for the reason that the case was not properly briefed nor prepared for appeal. See Overton v. Colored Knights of Pythias, 163 S. W. 1053. And it is again urged that the brief herein should not be considered for similar reasons. We have, however, concluded to overlook the defects pointed out and consider the case upon its merits.

[1] The first assignment complains of the failure of the court to file its conclusions of law and fact; appellant having made a request therefor. There is nothing in the record to show that this request was called to the attention of the trial judge. While the motion for new trial was overruled on the 26th of April, the request for such finding was not filed until the 3d of May, nor was any bill of exception reserved to the action of the court in this respect. In the absence of a bill of exception and failure of the record to show that such motion was called to the attention of the trial court, the matter must be regarded as waived. See Landa v. Heermann, 85 Tex. 1, 19 S. W. 885; Overton v. Colored Knights of Pythias, supra; Alamo Fire Ins. Co. v. Schacklett, 26 S. W. 630; Georgia Home Ins. Co. v. O'Neal, 14 Tex. Civ. App. 516, 38 S. W. 62; T. & P. Ry. Co. v. Shawnee Cotton Oil Co., 55 Tex. Civ. App. 183, 118 S. W. 776; Guadalupe County v. Poth, 153 S. W. 919; Farmers' State Bank v. Farmer, 157 S. W. 283.

[2] Besides this it appears that there is an agreed statement of facts in the record, signed by counsel for both parties and approved by the court. This being true, the error, if any, in failing to file conclusions of fact and law by the court, is harmless. See Guadalupe County v. Poth; Farmers' State Bank v. Farmer, supra; Jacobs v. Nussbaum, 133 S. W. 484; Sutherland v. Kirkland, 134 S. W. 851; Landa v. Heermann, supra. We therefore overrule this assignment.

[3] The next contention is that Mary and George Overton had no insurable interest in the life of their father; hence the court erred in rendering judgment in their favor. The facts, as above recited, not only show that Oscar Overton was the putative father of Mary and George Overton, but, in addition, show that he recognized them as his children, and that they depended on him for support and maintenance; Mary Overton at the time of the trial being only 19 years of age and still going to school, and George at the time the policy was written was a minor, though at the time of Oscar Overton's death was over 21 years of age. Ordinarily, it is necessary for the beneficiary to have an insurable interest in the life of the insured, in order to recover. This, however, does not seem to be the case where the policy is issued by a fraternal order, as in the instant case. See Joyce on Insurance, vol. 2, § 729, where it is said:

"We have discussed elsewhere the question of the necessity of an insurable interest in the beneficiary or assignee of a regular life insurance policy. But in regard to the insurable interest of a beneficiary under a certificate in a mutual benefit, benevolent, or fraternal organization, the better rule seems to be that if the contract is not procured by the beneficiary, but is made with the member himself, and at his instance and request, the beneficiary is not required to have an insurable interest on the life of the member, except in those cases where the statute of incorporation, charter, by-laws, or articles of association impose restrictions upon the designation of the beneficiary, or provide that he shall have an insurable interest."

It has, however, been determined in this state that illegitimate children have an insurable interest in the life of their parents. Maxey v. Franklin Life Ins. Co., 164 S. W. 438; Stahl v. Grand Lodge A. O. U. W., 44 Tex. Civ. App. 203, 98 S. W. 643. In the first case cited, which was a controversy between the wife of the assured and his illegitimate daughter as to the proceeds of an insurance policy, it was said:

"Under the decisions of this state, which we believe to be in accord with the weight of the authorities, a legitimate child has an insurable interest in the life of his father. Wilton v. N. Y. Life Ins. Co., 34 Tex. Civ. App. 156, 78 S. W. 403; 25 Cyc. 704. And in Equitable Life Ins. Co. v. Hazelwood, 75 Tex. 338, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893, a judgment in favor of a beneficiary named in a policy upon the life of his brother was sustained. And it seems that such ties of relationship as that of brothers and of parent and child are sufficient to show such insurable in-

terest without further proof of reasonable expectation on the part of the beneficiary of future benefits from the continued life of the insured. Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924. In the case of Stahl v. Grand Lodge A. O. U. W., 44 Tex. Civ. App. 203, 98 S. W. 643, it was held, in effect, that an illegitimate daughter by virtue of kinship alone had an insurable interest in the life of her father, who had taken out an insurance policy in her favor; that he owed the moral duty to support his daughter; and that his act in taking out the policy was not contrary to public policy, but was one to be encouraged and commended. The reasoning advanced in that decision we believe to be sound, and we approve it. The evidence in this case shows, without controversy, that J. H. Maxey entertained feelings of very tender regard for Villita Maxey from her infancy up to the date of the change of the policy; that he had frequently extended financial assistance to the mother of the child, which inured to the child's benefit also. And the evidence tends to show that if he had remained in a normal condition of mind, and had been unmolested by any interference from outside sources, those benefactions probably would have continued. But the natural ties of blood between J. H. Maxey and Villita Maxey, independent of the foregoing circumstances, were sufficient to overcome any reasonable supposable motive on the part of the daughter to bring about the death of her father which, under the decisions of our courts above noted, is the true test of insurable interest."

In Stahl v. Grand Lodge A. O. U. W., supra, it was held, as shown by the syllabus, that:

"Where the constitution of a mutual benefit society provided that each member should designate the beneficiaries who should be members of his family, or some one related to him by blood, or who should be dependent on him, a member might designate as a beneficiary an illegitimate daughter; she being related to him by blood and being dependent on him."

In Best v. House (Ky.) 113 S. W. 849, it is said:

"It is admitted in the record * * * that they were the children of T. C. Bronston, and were so recognized by him from their birth to his death; that he treated them as such, furnished them with the necessaries of life, and aided in their education. * * * Bronston was under a moral obligation to provide for appellees, and there was no proof that they importuned or attempted to influence him in any manner to make the conveyance. * * * 'When the father knows with certainty that he is the father of illegitimate children, a natural obligation rests upon him to make provision for them; and when, as in this case, there are no legitimate issue, that natural obligation is greater than any obligation to his collateral kin.'"

We think, under the facts of this case, that said children had an insurable interest in the life of their father, and that he was under a moral obligation to support and maintain them; and we are willing to rest our holding on the doctrine announced in the two Texas cases above mentioned.

Believing that the court below did not err in rendering the judgment it did, the same is in all respects affirmed.

Affirmed.