### WRIGHT v. FIRST GUARANTY STATE BANK OF BELLEVUE. (No. 11361.) *

(Court of Civil Appeals of Texas. Fort Worth. Jan. 16, 1926. Rehearing Denied Feb. 20, 1926.)

1. Trial ⚖═397(4).

Failure to file requested findings of fact and conclusions of law *held* not error, where testimony raised only one issue, and finding in judgment showed decision thereof.

On Appellant's Motion for Rehearing.

2. Chattel mortgages ⚖═138(3).

Landlord making advances to tenant for supplies on one year had no lien on mortgaged crop raised following year, as against chattel mortgage against crops raised that year.

Appeal from District Court, Clay County; Paul Donald, Judge.

Suit by the First Guaranty State Bank of Bellevue against L. S. Wright and another.

From adverse judgment, defendant named appeals. Affirmed.

Wantland & Glasgow, of Henrietta, and J. S. Dickey, of Wichita Falls, for appellant.

Benson & Benson, of Bowie, for appellee.

BUCK, J. The First Guaranty State Bank of Bellevue filed a suit against J. W. Stephenson on a promissory note for $900, principal, and for foreclosure of a chattel mortgage lien. The petition alleged that L. S. Wright had purchased from Stephenson and converted to his own use some of the property covered by the chattel mortgage lien. Judgment was rendered against defendant Stephenson for the debt, and as to this part of the judgment there is no complaint; Stephenson not having appealed. Judgment was rendered against defendant L. S. Wright for the value of the property covered by the mortgage lien and found by the court to have been purchased and converted by L. S. Wright, to wit, one black mare, of the value of $30; one brown horse, of the value of $50; one mule colt, of the value of $35; two cows and calves, of the value of $50; and two bales of cotton, of the value of $198—all of the total value of $363.10. Defendant Wright has appealed by writ of error, and only one alleged error is urged, to wit, that the trial court erred in not filing his findings of fact and conclusions of law upon the written request of defendant Wright so to do. A statement of facts appears in the record.

From the statement of facts it appears that the only conflict in the testimony of defendant Wright and Cashier Boyd, of the plaintiff bank, was that Wright claimed an agreement had been made between them to divide the crop of 1923, raised by Stephenson on Wright's farm, and Boyd denied the agreement. Mr. Wright testified:

"I did have a conversation in the bank of the plaintiff herein, in Bellevue, prior to the 1st of January, 1923, at a time when Mr. Boyd and Mr. Stephenson were present, and as to what was said between Mr. Boyd, Mr. Stephenson, and myself with reference to Mr. Stephenson staying on this place, and the agreement with regard to the indebtedness and the crops, will state Mr. Stephenson came in the bank there— I think it was on September 22d. I had bought some cotton from him, and I asked him if he was going to give me any out of that, and he says, 'The bank here has got it tied up.' I told him, I says, 'I furnished you supplies, and I haven't got any rent or anything out of you, and no money to apply on your indebtedness,' and I says, 'I have got to have some money out of this,' and he says, 'The bank has got it tied up.' At this time Mr. Boyd was not present when we were having this conversation, so I says, 'Let's see Mr. Boyd about dividing up this cotton, me taking a little and him taking some.' He didn't want to do that, but I explained to him that I had to have a little money out of it, so Mr. Boyd finally agreed to. take— agreed for him to take half of his cotton and

turn to me half of it. Mr. Stephenson was present at that time, and I told Mr. Boyd at that time that Mr. Stephenson had turned the place back to me, but I told Mr. Boyd that I would let him stay on the place for another year, and that we would whack up the crop. I don't remember whether Mr. Boyd agreed to that or not, I don't remember about that, but I told him that is what I would do, and he finally agreed to the cotton proposition, and I suppose he agreed to the other. When I told Mr. Boyd that I would agree to let Mr. Stephenson stay on the place for 1923 and that we would whack up the crop, he did not make any objection to that, and he never did object until I bought the cotton in the fall of 1923. * * *"

"The agreement that I had with Mr. Boyd, with reference to this cotton, was with reference to the cotton made in 1922; that is, part of it. There wasn't much cotton made in 1922, but the agreement was on the cotton that was made in 1922. I agreed that I would let Mr. Stephenson stay on the place for 1923, and I suggested a split of the crops for that year, but I don't know whether Mr. Boyd said anything about a split on that or not for the year 1923."

Mr. Boyd testified, on being recalled, as follows:

"I remember the occasion of Mr. Wright, Mr. Stephenson, and myself discussing the matter of a division of some of the crop for 1922, and at that time the only thing that Mr. Wright said to me, with reference to the division of the crop for 1923, was this: He said, 'I will let Mr. Stephenson stay on the place another year and see if he can't make a big cotton crop and pay out,' but he didn't say a word about dividing the 1923 crop. * * * Mr. Wright did not say anything at all about a division of the crop in 1923, not in my presence, although he could have talked to Mr. Stephenson and I would not have heard him, I won't say that he did nor didn't.

"Q. You know as a matter of fact that the conversation that was had in the bank you three was present? A. There was several other parties present. There was no other conversation had between us at any time about Mr. Stephenson getting out of this indebtedness; nothing was said to me about settling up for 1923; that is, nothing was said to me about splitting the 1923 crop. I did not hear anything with reference to this split for 1923 until after the cotton was sold, until the two bales of cotton was sold, and then Mr. Wright told me it was agreed that we would take half the crop, but I told him I wouldn't make any agreement to that effect. Mr. Wright bought these two bales of cotton in the fall of 1923, and I demanded the two bales of cotton and told him not to ship them out, and that is when Mr. Wright said that we had had an agreement in 1922 to split the 1923 crop, and I told him that no such agreement had been made. Mr. Wright called my attention to the agreement. He says, 'Don't you remember up there at the bank we agreed to that?' And I said: 'No, sir; there was no such agreement ever existed.'

"Q. You remember when he told you up at the bank, you knew the conversation he was referring to? A. The conversation of 1922. I said I agreed to give up half of 1922. There wasn't but one conversation about that, and

that was at the bank in 1922, but in that conversation of 1922 the question of Mr. Stephenson staying on the place for 1923 was not discussed with me; the only words that was said was this: Mr. Wright said he would permit him to stay on the place another year to see if he could make a big crop, a big cotton crop, and pay out, and I imagine the reason he said that was because he had been talking about the 1922 crop. He had not said a word about the 1923 crop. When Mr. Wright and I had this conversation about the two bales, I believe he referred to the conversation that we had had in the bank, and I remember the circumstances of the conversation; I remember Mr. Wright and Mr. Stephenson being in there."

In the judgment rendered the court found that the defendant L. S. Wright purchased and thereby converted to his own use the property heretofore described, upon which plaintiff held a lien while said mortgage was a valid, outstanding, and subsisting lien, and with full legal notice of such lien, and that defendant Wright was therefore liable in damages to plaintiff in the sum of $363.10.

Appellant relies on Ry. Co. v. Dairy Co. (Tex. Civ. App.) 137 S. W. 137; Overton v. K. of P. (Tex. Civ. App.) 173 S. W. 472; Poulter v. Smith (Tex. Civ. App.) 149 S. W. 279; Stewart & Threadgill v. El Paso & Southwestern Co. (Tex. Civ. App.) 207 S. W. 594; Sutherland v. Kirkland (Tex. Civ. App.) 134 S. W. 851; Wandry v. Williams, 124 S. W. 85, 103 Tex. 91; Lester v. Oldham (Tex. Civ. App.) 208 S. W. 575.

In the case of Stewart & Threadgill v. El Paso & Southwestern Co., supra, the El Paso Court of Civil Appeals held, on motion for rehearing, that—

"In the case at bar, there were three issues of fact presented, viz.: Was the railroad company negligent in handling the animals? Were they damaged by reason of any such negligence? And, if so, the amount of such damage. Upon each of these issues, the evidence was conflicting. This court is unable to determine what the finding of the trial court was in respect to these several issues. The trial court may have found that the company was negligent, but that the animals had not been damaged, or its findings may have been vice versa. Or it may be that the court found all of these issues of fact in favor of the appellants, but may have deduced an incorrect legal conclusion. We are without any information as to the basis of the court's action in rendering judgment for the defendant. In this condition of the record, we are now of the opinion that we erred in holding that the failure of the trial court did not prevent appellants from making a fair presentation of their appeal. It may be that had the court filed the findings and conclusions, the appellants would not have been able to show any reversible error, but we cannot so presume. * * *

"The motion for rehearing is granted, and the cause now reversed and remanded."

This case held that where the trial court failed to file his findings of fact, and, even though a statement of facts be filed, where

the evidence is conflicting upon several points and the appellate court is unable to determine from the record what the findings of the trial court were in respect to these several points involved, the failure of the trial court to file his findings of fact deprived appellants of a fair presentation of their appeal.

In Barfield v. Emery, 177 S. W. 952, 107 Tex. 306 (Court of Civil Appeals decision 156 S. W. 311), Judge Phillips, speaking for the Supreme Court, said:

"We agree with the view expressed in the dissenting opinion of Chief Justice Conner that it does not appear that the omission of the trial judge to duly file his conclusions prevented a proper presentation of the questions involved in the appeal, or that it could have operated to the prejudice of the appellants in that court. We are of opinion therefore that it did not in itself warrant a reversal of the judgment."

See Tonn v. Inner Shoe Tire Co. (Tex. Civ. App.) 260 S. W. 1078; G. H. & S. A. Ry. Co. v. Stewart & Threadgill (Tex. Com. App.) 257 S. W. 526; Riley v. Austin, 245 S. W. 907, 112 Tex. 216.

[1] In the last-cited case it appears that the trial court incorporated in its original judgment its findings of fact upon the only issue raised by the pleadings and predicated thereon the only conclusion of law in the judgment. Thus, there was a finding of fact and conclusions of law in the judgment itself. See 257 S. W. 527, bottom page, second column. We think that such is true in the instant case. The only ground upon which Wright could claim judgment for himself as against the plaintiff bank was that Boyd, acting for the bank, agreed that the bank would divide equally with him the crop of 1923, made by Stephenson on Wright's land. Wright did not testify that Boyd so agreed, but he says that when he told Boyd that he would agree to let Stephenson stay on his place for 1923 and that they would "whack" up the crop, he did not make any objection to this statement and never did object until Wright bought the cotton in the fall of 1923. But Boyd stated positively that he never made such an agreement. By the court's finding, in its judgment, that the defendant Wright purchased and converted to his own use certain property mentioned in the chattel mortgage from Stephenson to the bank, and that thereby Wright became liable in damages to plaintiff in the total value of said property, we think it is evident that the court decided this conflict of testimony in favor of plaintiff. We think that the finding in the judgment serves the purpose and takes the place of findings of fact sought to have been filed by the plaintiff in error.

The judgment is affirmed.

### On Appellant's Motion for Rehearing.

[2] Appellant complains that the priority of the landlord's lien asserted by appellant over the chattel mortgage lien asserted by appellee was involved in the suit, and that there is no finding of the trial court upon this question. While appellant's pleadings mentioned that he was the landlord of Stephenson, yet he did not pray that his lien be foreclosed. Moreover, in his testimony he expressly stated that he was not relying on a landlord's lien to support his right to hold one-half of the cotton. He testified:

"I am not relying on a landlord's lien for holding this cotton. I am relying on an agreement that I had with Mr. Boyd. Yes, sir; I sold supplies to Mr. Stephenson in February last year, but I did not furnish Mr. Stephenson with any groceries during the year 1923."

The chattel mortgage lien asserted by appellee was against the crops raised during the year 1923. Therefore appellant had no landlord's lien for advances made or supplies furnished for the year 1923.

The motion for rehearing is overruled.