LIVERPOOL & LONDON & GLOBE INS. CO., Limited, v. JONES et al. (No. 134.)

(Court of Civil Appeals of Texas. Beaumont. June 28, 1917. Rehearing Denied Oct. 10, 1917.)

1. APPEAL AND ERROR ⚬═╗742(1)—ASSIGNMENT OF ERROR—STATEMENTS—COURT RULES.

Court rule 31 (142 S. W. xiii), providing that propositions under assignments of error shall be followed by a brief statement, in substance, of the record bearing on it, contemplates records of ordinary size; and where the record is so voluminous that it would be practically impossible to comply, and counsel has done his best by putting in hundreds of references to the pages and lines of the record, the assignment will be considered.

2. INSURANCE ⚬═╗335(3), 668(4)—WARRANTY CLAUSE—BOOKS—SUFFICIENCY.

A policy containing a clause that insured was "to keep a set of books showing a complete daily record of all cotton handled, the weight and classification of each bale, all purchases, sales, and shipments, with the identity

of each bale," etc., is sufficiently complied with if the books are sufficient to enable the insurer with reasonable certainty to arrive at the amount of the loss, and whether the books so kept enable the insurer to determine the loss with reasonable certainty is an issue of fact for the jury.

3. INSURANCE ⚬═╗632 — FIRE — PLEADING — IDENTITY OF PROPERTY LOST.

In an action against an insurance company for loss by fire of 405 bales of cotton, it was not error to overrule a special exception to the complaint for the reason that the identity of said bales by tag number or otherwise was not disclosed, where the complaint set out the date and place of the fire, and the policy covered cotton situate anywhere in the state belonging to plaintiffs.

4. INSURANCE ⚬═╗665(4) — FIRE — ASCERTAINMENT OF LOSS—SUFFICIENCY OF EVIDENCE.

In an action for insurance on cotton lost by fire, evidence *held* sufficient to support the finding of the jury as to the number of bales.

5. APPEAL AND ERROR ⚬═╗1003 — VERDICT — SUFFICIENCY OF EVIDENCE TO SUPPORT.

A finding by a jury will be set aside only where the verdict is so overwhelmingly against the preponderance of the evidence as to clearly show that such verdict was wrong, or was the result of some passion, prejudice, bias, or other improper motive or consideration.

6. INSURANCE ⚬═╗665(4) — FIRE — ASCERTAINMENT OF VALUE OF PROPERTY BURNT—EVIDENCE.

In an action on a fire policy, evidence *held* sufficient to support the verdict of the jury as to the value of the cotton destroyed.

7. INSURANCE ⚬═╗665(3)—WARRANTY RECORD CLAUSE—BOOKS—SUFFICIENCY—EVIDENCE.

In an action on a fire policy, evidence *held* to support a finding of the jury that the books of plaintiff were a substantial compliance with a warranty record clause in a policy requiring insured "to show a complete daily record of all cotton handled, the weight and classification of each bale, all purchases, sales, and shipments, with the identity of each bale."

8. JUDGMENT ⚬═╗672—FORM—DOUBLE RECOVERY.

A judgment for a specified amount against a fire insurance company providing that plaintiff "may have his execution," and also that certain banks who were parties "may have" their executions for certain amounts of that obtained by plaintiff, was not erroneous as allowing double recovery, where it also provided that any money paid to such banks would be credited on the judgment of the plaintiff.

9. APPEAL AND ERROR ⚬═╗931(7)—NEGLECTED ISSUES—PRESUMPTION ON APPEAL.

Where an issue of fraud in a pleading was not submitted by the trial court, and there was no request for same, nor any showing of it in the judgment or finding thereon, it will be presumed on appeal that such issue was found by the court against the appellant, under Vernon's Sayles' Ann. St. 1914, art. 1885, it not appearing that codefendants were served with answer setting up fraud.

Error from District Court, San Augustine County; Hon. A. E. Davis, Judge.

Suit by Roland Jones and C. A. McKnight, composing the firm of Roland Jones & Co., against the Liverpool & London & Globe Insurance Company, Limited, in which the Stone Fort National Bank of Nacogdoches, the Commercial Guaranty State Bank of Nacogdoches, and the First National Bank of San Augustine were also made parties de-

fendant. Judgment for plaintiffs, and defendant insurance company brings error. No error.

Locke & Locke, of Dallas, for plaintiff in error. J. C. Harris and Blount & Strong, all of Nacogdoches, Woods, King & John, of Houston, D. M. Short & Sons, of Center, and Wm. McDonald, of San Augustine, for defendants in error.

HIGHTOWER, C. J. This suit was brought by Roland Jones and C. A. McKnight, composing the firm of Roland Jones & Co., against the Liverpool & London & Globe Insurance Company, Limited, to recover $27,452.25, besides interest, the alleged value of 405 bales of cotton, alleged to have been destroyed at the San Augustine Compress Company's plant, at San Augustine, Tex., on March 24, 1914, and to have been covered by a blanket policy of insurance issued by the defendant in favor of plaintiffs in the sum of $100,000, covering cotton in bales belonging to the plaintiffs, situate anywhere in the state of Texas.

The defendant filed its answer, admitting the issuance of the policy, and also admitting that some bales of cotton, but not as many as 405 bales, belonging to the plaintiffs, had been destroyed on the date and at the place mentioned in plaintiffs' petition, and further alleged that by a provision of the policy the loss, if any, due thereunder, was payable to banks having made advances against said cotton, to the extent of such advances, and that defendant had been notified that the First National Bank of San Augustine, the Stone Fort National Bank of Nacogdoches, and the Commercial Guaranty State Bank of Nacogdoches had made advances against said cotton, and prayed that such banks be made parties to the suit. The defendant not only denied that the number of bales destroyed and the value of same were less than claimed, but urged, as a further defense against the entire demand of plaintiffs, breaches of the record warranty clause contained in the policy sued on, and also alleged fraud on the part of plaintiffs in presenting their claim.

Each and all of the above-mentioned banks were made parties defendant, as prayed by the insurance company, and each filed its answer, setting up the amounts of their respective advances on the cotton destroyed, and prayed for judgment against the defendant insurance company for the same.

Plaintiffs filed their first amended original petition, containing, substantially, all the material allegations made in their original petition, but in the amended petition alleging that the value of the cotton destroyed was $25,979.68.

The defendant insurance company having alleged, in its answer, that the plaintiffs breached one of the warranty clauses contained in said policy relating to the keeping of a set of books by plaintiffs, and also having

ing alleged fraud on the part of plaintiffs in the presentation of their claim to defendant, plaintiffs filed a supplemental petition, denying the allegations in defendant's answer, to the effect that plaintiffs had failed to keep a set of books as contemplated by the policy sued on, and further denying the allegation in said answer that plaintiffs were guilty of fraud in presenting their claim to defendant, and pleaded specifically that the books kept by plaintiffs were such as were contemplated by the terms of said policy, and that there was no breach of warranty in that respect, as claimed by defendant; and plaintiffs further alleged, in this supplemental petition, that if there was, in fact, a breach of any warranty relating to the keeping of such books, that such breach was waived by defendant, and that defendant was estopped to claim any such breach, and praying, in conclusion, for all relief, as prayed for in their amended petition.

Before the trial commenced, it was agreed as between the plaintiffs and said banks, the Stone Fort National Bank of Nacogdoches, the Commercial Guaranty State Bank of Nacogdoches, and the First National Bank of San Augustine, that all of the 405 bales of cotton, which, so far as they were concerned, were lost by the fire in question; that the First National Bank of San Augustine furnished the money for the purchase of 298 bales of the cotton destroyed; that of the 405 bales of cotton destroyed, the Commercial Guaranty State Bank of Nacogdoches had furnished the money for the purchase of 53 bales of such cotton; that the Stone Fort National Bank of Nacogdoches had furnished the money for the purchase of 54 bales of such destroyed cotton, and that each of said banks had a lien upon such cotton to secure the amount of money which each had respectively furnished for the purchase of same; and that, as between the plaintiffs and said banks, the banks were entitled to recover the amount of money set forth in their answers, and if there should be a recovery by the plaintiffs, as against the insurance company, sufficient to liquidate the entire indebtedness of said banks, that each should recover the full amount so furnished by it for the purchase of said cotton, receipts for which each bank, respectively, held; but if there should be a recovery by the plaintiffs against the insurance company for a less sum than would be sufficient to liquidate all of the debt due each bank, that each should recover of the total recovery of plaintiffs in the proportion to the relation that the number of bales held by each should bear to the 405 bales destroyed.

The case was tried with a jury and was submitted upon special issues, and the jury's answers to such special issues will be hereinafter referred to, in so far as the same are considered material and necessary to a disposition of this appeal.

Upon conclusion of the evidence, the insur-

ance company, plaintiff in error here, requested the court to give to the jury a peremptory instruction in its favor, which request was by the court refused, and the first assignment of error contained in the brief of plaintiff in error challenges the correctness of the action of the court in refusing this special instruction.

The proposition under this assignment is:

"The undisputed evidence showed that the plaintiffs had violated the record warranty clause of the policy sued on, in that they failed to keep a set of books, showing a complete daily record of all cotton handled, showing among other things the weight and classification of each bale, and all purchases, sales, and shipments, with the identity of each bale, and its location and removal from yards or compresses to other locations, and to produce such books to the defendant after the loss."

Defendants in error have, in their brief, interposed objections to the consideration by this court of this assignment of error made by plaintiff in error, and claim that the assignment should not be considered by this court, for the reason, as alleged by defendants in error, that plaintiff in error has not complied with rule 31 (142 S. W. xiii), relating to the assignments of error in this court, in that said assignment of error and proposition are not followed by such statement of what appears in the record relative to such assignment as is required by said rule.

Rule 31 referred to, in so far as applicable here, provides that propositions under assignments of error shall be followed by a brief statement, in substance, of such proceedings, or part thereof, contained in the record, as will be necessary and sufficient to explain and support the proposition, with a reference to the pages of the record; that such statement must be made faithfully, in reference to the whole of that which is in the record having a bearing upon said proposition, upon the professional responsibility of counsel who makes it, and without intermixing with it arguments, reasons, conclusions, or references.

[1] Defendants in error have devoted much of their brief, and have urged this point therein at some length, and have cited and discussed several authorities, which they claim support their contention that rule 31 has not been even substantially complied with by plaintiff in error, as to its first assignment of error, and we have considered the point at some length, but have reached the conclusion that this court, in view of the massive and voluminous record in this case, ought not to refuse to consider this assignment of error, because we are of the opinion that it would have been practically next to impossible for counsel for plaintiff in error to have followed up the proposition under this assignment with such a statement from matters appearing in the record having reference thereto, as is contemplated by rule 31 in records of ordinary size. The statement of facts alone in this record contains several thousand pages, and consists of much oral testimony, many depositions, photographic copies of book entries, bills of lading, invoices, canceled checks, drafts, acceptances, compress receipts, and many other matters, which are in such shape that their substance could not be stated in such manner as is contemplated by said rule 31. It does not appear, in our opinion, that counsel for plaintiff in error has, purposely or otherwise, avoided compliance with said rule, but, on the contrary, it is apparent to this court that counsel has made a faithful effort to comply with said rule, in so far as would be reasonably expected under the circumstances. While matters contained in the record having reference to this assignment have not been substantially stated under this proposition, yet hundreds of references have been made by counsel to the record where these matters might be found by the court, and, in many of these instances, not only the page of the record but the very lines of the page where such matters are shown are pointed out. In view of this faithful effort on the part of counsel for plaintiff in error to comply with said rule, we have concluded that the objections interposed to the consideration of this assignment should be overruled.

At the outset, we desire to say, also, that this record is such in volume as to practically make it impossible for this court to discuss matters of evidence contained therein in such manner and to such extent as it would like to do, and would do, ordinarily. If this court, in disposing of this appeal, were to attempt to discuss at length the matters contained in this record in the way of evidence, and having reference to the assignments of error before us, the opinion of the court would, necessarily, be carried to such length as would be entirely beyond the bounds of reason. We wish to say, however, that we have given much time to the consideration of this record, and will content ourselves in disposing of this appeal with the statement of the conclusions we have reached, without going at length into what is shown in this record relative to the several assignments.

[2] The record warranty clause contained in the policy sued on, breach of which is claimed by plaintiff in error, is as follows:

"The assured under this policy hereby covenants and agrees to keep a set of books showing a complete daily record of all cotton handled, showing among other things, the weight and classification of each bale, and all purchases, sales, and—or shipments, with the identity of each bale and its location and removal from yards or compresses to other locations, and, in case of loss, to produce such books to this company, or this policy shall be void."

From what has been stated above, it will be seen that it is the contention of plaintiff in error that the evidence showed, without dispute, that Roland Jones & Co. failed to keep a set of books which showed a complete daily record of all cotton handled by them, showing among other things, the

weight and classification of each bale, and all purchases, sales, and shipments, with the identity of each bale, and its location and removal from yards or compresses to other locations, and failed to. produce such books to plaintiff in error after the fire in question, and that, in so failing to keep and produce such books, Roland Jones & Co. were guilty of a breach of said warranty clause, and that, therefore, plaintiff in error was entitled to an instructed verdict in its favor.

In answer to such proposition, defendants in error make, among others, the following counter-proposition:

"Where books are kept by the insured, under the terms of a policy requiring books to be kept, showing the transactions in the business covered by the policy, which are sufficient to enable the insurer with reasonable certainty to arrive at the amount of the loss, if any, it will be held to be a compliance with the terms of the policy, and whether the books so kept enable the insurer to determine the loss therefrom with reasonable certainty becomes an issue of fact for determination by the jury under proper instructions from the court."

We think that this counter-proposition announces a correct rule, and one that should be applied in disposing of the assignment now under consideration.

The set of books kept by Roland Jones & Co., as shown by the record, consisted of the following: (1) a book denominated "Sales Record Book"; (2) a book denominated "Tag Book No. 1"; (3) a book denominated "Tag Book No. 2"; (4) a book denominated "Yard Book No. 1"; (5) a book denominated "Yard Book No. 2"; (6) a book denominated "Yard Book No. 3."

These were all in book form, and bound. There were other records and memoranda kept by Roland Jones & Co., showing their handling of cotton covered by the policy in question, consisting of the following: (1) Carbon copies of daily reports made by Roland Jones & Co. to plaintiff in error, showing the number of bales of cotton on hand at the end of each day; (2) the contents of 19 envelopes, consisting of canceled checks, drafts, and acceptances, relative to the cotton purchased and sold by Roland Jones & Co. during the period covered by the policy; (3) a loose leaf ledger book containing duplicate weight sheets issued by the San Augustine Compress Company, showing the weight of each and every bale of cotton claimed to have been destroyed by the fire in question.

This court could not undertake to state in its opinion, disposing of this assignment, what the contents of the several books mentioned show, with reference to the handling of cotton by Roland Jones & Co. during the period of time covered by the policy in question, for the reason that such a statement would, necessarily, carry the opinion to such length as would be beyond the bounds of reason, and, therefore, should not be expected of the court, and we have, therefore, concluded that it will suffice to say that, in our opinion, these books, when considered all together, contained such data as was sufficient to enable plaintiff in error with reasonable certainty to arrive at the number of bales of cotton owned by Roland Jones & Co. at the compress at San Augustine at the time of the fire in question, and also contained sufficient data to enable plaintiff in error to arrive at the weight of such cotton, its class or grade at the time same was destroyed, and that, therefore, such books, as kept, were sufficient to enable plaintiff in error to determine the loss sustained by Roland Jones & Co. in the destruction of said cotton by fire.

From what we have said, it follows that this court is of the opinion that the trial court did not err in refusing to peremptorily instruct a verdict for plaintiff in error on the theory of the breach of warranty, as claimed, and the first assignment of error is, therefore, overruled. Brown v. Insurance Co., 89 Tex. 590, 35 S. W. 1060; Phoenix Ins. Co. v. Padgitt, 42 S. W. 800; Shoe Co. v. Insurance Co., 8 Tex. Civ. App. 227, 28 S. W. 1032; Fire Ins. Co. v. Walker, 153 S. W. 398; Insurance Co. v. Hardin, 151 S. W. 1152; Art. 4874, Vernon's Sayles' Statutes.

[3] The second assignment of error complains of the ruling of the trial court in not sustaining the following special exception interposed by appellant to plaintiffs' first amended original petition:

"The defendant specially excepts to all that portion of the plaintiffs' first amended original petition, wherein the plaintiff seeks to recover the value of 405 bales of cotton alleged to have been destroyed; for the reason that the identity of said bales by tag number or otherwise is not disclosed, and in this respect the allegations are insufficient to enable the defendant to properly prepare its defense."

The allegations of the petition, against which this special exception is directed, are:

"On the 24th day of March, A. D. 1914, while said policy was in force, plaintiffs owned and possessed, and had collected in the town of San Augustine, Texas, four hundred five (405) bales of cotton; that on said day and date said four hundred five (405) bales of cotton were totally destroyed by fire in the town and county of San Augustine, Tex., that said four hundred five (405) bales of cotton were then and there of the cash value in the market of twenty-five thousand nine hundred seventy-nine and 68/100 dollars."

The proposition under this assignment is:

"A plaintiff suing for the value of articles alleged to have been destroyed, or of whose identity or description he has peculiar knowledge, should be required, in response to a special exception, to identify such articles, in order that the defendant may prepare its defense both as to the existence, the alleged destruction, and alleged aggregate value of such articles."

In support of this proposition, plaintiff in error cites H. E. & W. T. Ry. Co. v. Seale, 28 Tex. Civ. App. 364, 67 S. W. 437; Ry. Co v. Farrington, 40 Tex. Civ. App. 205, 88 S. W. 889; Schneider & Davis v. Ferguson, 77 Tex. 572, 14 S. W. 154.

In the first case cited it was held that the petition in a suit by a passenger against a

railroad company for damages to baggage, which consisted of three dresses, totally destroyed, and shirt waists, collars, cuffs, and ladies' undergarments, which were injured, and without stating the number of such injured articles, or the value of any of them, was not sufficiently specific against a special exception.

In the second case cited the plaintiff sued a railroad company for damages occasioned by delay in a shipment of live stock, plaintiff claiming that he was damaged by a fall in the market by reason of such delay, and by depreciation in value of the animals, caused by defendant's alleged negligence in keeping them in a muddy pen. The court, on appeal, held that it was error for the trial court to refuse to require the plaintiff to separately state what amount of damages he claimed by reason of the decline in the price of cattle, and also for depreciation in value.

In the third case cited the plaintiff sued the defendant for damages growing out of an alleged unlawful seizure of a stock of merchandise, consisting of numerous and different articles going to make up the stock, under a writ of attachment. The petition named a number of the kinds of goods taken, without giving the number or value of the several items. It was held, on appeal, that the trial court should have sustained a special exception directed against the plaintiff's petition, on the ground that the value of the different articles of merchandise seized should have been stated.

We do not question the correctness of the holding in either of the above-mentioned cases, but we do not think that they have application here. There was nothing claimed to have been destroyed by the fire in question except the cotton in bales, and the number of bales so destroyed was stated in the petition, and the value of the entire number was alleged, and we do not think that it was incumbent upon the plaintiffs, in their petition, to identify each bale by its tag number, which seems to be the real contention here, because to so hold would be, in effect, to hold, according to plaintiff in error's contention, that it was entitled to know the identity of each bale of cotton; that is to say, from whom it was purchased, its weight and grade and market value. We think that such a description of the cotton alleged to have been destroyed would have been entirely more specific than the rules of pleading require, and would have placed an unnecessary labor upon the plaintiffs. It will be borne in mind that the policy of insurance simply covered cotton in bales owned by Roland Jones & Co., situate anywhere in the state of Texas, to the extent of $100,000 in value, and the cotton was not insured for so much a bale, or by any character of particular description. We, therefore, think that the trial court did not err in overruling the special exception, as claimed. The second assignment of error is, therefore, overruled.

[4] Under the third assignment of error, it is complained:

"The verdict of the jury in response to question No. 1 is contrary to the great preponderance of the evidence."

Question No. 1, submitted by the court, was as follows:

"How many bales of cotton did the plaintiffs have at the plant of the San Augustine Compress Company on March 24, 1914, which were destroyed by fire? You will answer this question by stating the number of bales in figures."

The jury answered: "405.".

In support of their contention that 405 bales of cotton were destroyed, as claimed, plaintiffs introduced as a witness, O. E. Strahan, manager of the San Augustine Compress Company, who testified, among other things, as follows:

"I live at San Augustine; have been here going on three years, a little better than two years. I have been manager of the San Augustine Compress since I have been here. I was working in that capacity in the fall of 1913 and winter of 1914, up until March 24, 1914, the day the compress was destroyed by fire. I had all of the weighing of cotton about the compress, and everything like that; checking in the cotton, I issued cotton tickets, compress tickets, compress tag numbers, things of that kind."

And also:

"A lot of cotton that was owned by Roland Jones & Co. was under the shed of the compress at the time of the fire; it was on the platform out from under the shed, and we called it under the shed. It was located under the shed of the platform."

And also:

"When we put that cotton up, that cotton belonging to Roland Jones & Co., I counted it. I counted the bales three times right along at the same time."

And also:

"I first counted 405 bales, then I counted 406 bales, and then I counted it to see which was correct, I counted 406 bales twice and just quit."

And also:

"Besides Roland Jones & Co., Mr. Clark over there, of Clark, Downs & Co., produced a compress ticket some time this summer that he had found for one bale of cotton. The bale of cotton belonged to Roland Jones & Co., 405 bales. That is the way I account for that 406 bales, 405 for Roland Jones & Co., and one belonging to Mr. Clark, of Clark, Downs & Co."

E. A. Alvis, who was bookkeeper for the San Augustine Compress Company, witness for the plaintiffs, testified, among other things, as follows:

"I am bookkeeper for the San Augustine Compress Company, but I do other work besides bookkeeping. I went to work there in 1913, at the beginning of the season, and have worked there since the beginning of the cotton season of 1913–1914."

And also:

"I have counted the cotton after it was put under the shed, after it was blocked under; that is one of my duties, that is when I had time; I was supposed to. I counted it once. I counted 400 bales. I never counted it any more; I think two or three others counted it, and one of them counted it 405 and another one 405, and some of them counted it twice, so I took their word for it. Mr. Strahan counted it."

C. A. McKnight on this point testified, among other things, as follows:

"I said the last purchase and the last sales were either the last part of January or first of February. After our last daily report was made under the policy, there were no purchases or sales from the cotton that was left on hand up to the time of the fire."

And also:

"The daily report from February 7th to March 2d, the latter being the last report made, shows that 400 bales of cotton was reported each day during said time."

Plaintiffs also introduced in evidence the daily reports made by Roland Jones & Co. to the insurance company, plaintiff in error, showing that Roland Jones & Co. had on hand at the plant of the compress at San Augustine each and every day between February 7 and March 2, 1914, 400 bales of cotton. In addition to this, plaintiffs below also introduced in evidence compress receipts issued by the San Augustine Compress Company in favor of Roland Jones & Co., showing that, at the date of the fire, the compress company had on hand for Roland Jones & Co. 405 bales of cotton. These compress receipts were held by the different banks hereinbefore named, as follows: Those held by the Stone Fort National Bank of Nacogdoches were for 54 bales of cotton; those held by the Commercial Guaranty State Bank were for 53 bales of cotton; and those held by the First National Bank of San Augustine were for 298 bales of cotton.

All of these receipts or compress tickets issued by the San Augustine Compress Company were turned over by Roland Jones & Co. to the several banks named, to secure such banks for advances of money furnished Roland Jones & Co. to enable them to purchase such cotton, and the very fact that these compress tickets were outstanding in the hands of these banks at the time of the fire, would strongly indicate, circumstantially at least, that the compress company had on hand for Roland Jones & Co., at the time of the fire in question, 405 bales of cotton, as was claimed by the plaintiffs, and when taken in connection with the positive testimony of the witnesses, Strahan and Alvis, hereinbefore mentioned, would be abundantly sufficient, in our opinion, to warrant the finding of the jury, that 405 bales of cotton belonging to Roland Jones & Co. were destroyed by the fire, as claimed by them. But this is not all on this point that was in evidence, because the books of Roland Jones & Co., hereinbefore mentioned, as well as all the canceled checks, vouchers, drafts, weight sheets, etc., that were kept by Roland Jones & Co. and which have been heretofore mentioned, were also introduced in evidence. Therefore, in view of all this testimony introduced by the plaintiffs showing and tending to show that there were 405 bales of cotton belonging to Roland Jones & Co. destroyed by the fire in question, this court could not say that the evidence was insufficient to warrant the jury in so finding. It is true, plaintiff in error introduced testimony which tended strongly to show that there were not as many as 405 bales of cotton destroyed, and such testimony tended strongly to show that the number of bales so destroyed were not in excess of 286 bales; but, without discussing the testimony introduced by the plaintiff in error, it is sufficient to say that the evidence on this issue, as shown by the record, is not in such shape as to warrant this court in holding that the verdict of the jury is not sufficiently supported by the evidence.

[5] In the case of Lisle-Dunning Const. Co. v. McCall, 167 S. W. 810, Chief Justice Fly, speaking for the San Antonio Court of Civil Appeals, in disposing of an assignment of this character, among other things, said:

"The first assignment of error complains of the refusal of the [trial] court to instruct the jury to find for appellant, and requires an investigation of the entire testimony. Appellant gives undue importance to the testimony of its witnesses, seemingly losing sight of the principle that if the evidence of the witnesses of the appellee is sufficient to sustain a verdict, it will be given preference over countervailing testimony. It does not, therefore, matter what the witnesses for appellant may have sworn, as the evidence of witnesses for appellee has been given full faith and credit by the jury, and if that testimony upholds the verdict, this court must and will sustain it. * * *"

The opinion goes on at further length, but it would serve no useful purpose to further quote Judge Fly, but so far as we have quoted, the proposition of law announced by him seems to be well sustained by the decisions of nearly all of the appellate courts of this state. We do not mean to be understood, however, as holding that this court would not be authorized, in any case, to set aside the verdict of a jury on a finding of fact, on the ground that the evidence was insufficient to support such finding. On the contrary, we believe that a Court of Civil Appeals in this state has the authority to reverse and remand a case where the verdict of the jury on a question of fact might be so overwhelmingly against the preponderance of the evidence as to clearly show to the court that such verdict was wrong, or where the court might be able to say that the state of the record was such as to indicate that a verdict on a question of fact complained of was the result of some passion, prejudice, bias, or other improper motive or consideration, and in such instance, this court would not hesitate to exercise such authority. But, in this case, the court is of the opinion that the evidence in favor of the jury's verdict that there were as many as 405 bales of cotton destroyed preponderates in favor of the verdict. Ordinarily, under an assignment of this character, this court would set out the testimony of both sides, at least in substance, but in view of the voluminous record in this case, this court is not going to attempt to do so. The third assignment of error is overruled.

[6] The next assignment of error, which is

found in the brief and evidently styled "Third Assignment of Error" by mistake, is as follows:

"The verdict of the jury in response to question No. 2 is contrary to the great preponderance of the evidence."

Question No. 2 submitted to the jury was as follows:

"What was the cash market value at San Augustine, Tex., on March 24, 1914, immediately before the fire, of such bales of cotton as were owned by the plaintiffs, and were destroyed in said fire? You will answer this question by stating the amount in figures and placing the dollar mark in front of the figures."

The jury answered: "$25,979.68."

On this point, C. A. McKnight, of the firm of Roland Jones & Co., testified, among other things, as follows:

"There were 88 bales of grade 1, that means good middling; we had 97 bales of grade 2, this is strict middling; we had 124 bales of grade 3, that is middling; we had 56 bales of grade 4, that is strict low middling; we had 38 bales of grade lower down than grade 4, that is grade 5, that is low middling. And 2 of strict good ordinary, that would be grade 6. That is the number of bales, 405, that I made up from the records showing the classification and number of bales, and showing the total weight of them."

The witness, McKnight, further testified:

"The custom among cotton men in figuring on lots of cotton as to what price or standard they take, is to figure on port spot quotations, the spot quotations at some port. I figured this cotton on spot quotations at the port of Galveston the day before the fire; I took the freight off in figuring."

And also:

"I took the 405 bales of cotton and got the total weight. The total weight of the 405 bales was 205,129 pounds, and, by my process of figuring, I have arrived at what it was worth on an average per pound as 12 and a fraction cents; then my total was worth $25,979.68. That is the exact amount in this list, as claimed. Yes, that is the way I averaged that last claim on the grades and classifications, and average price and average weight, and then arrived at that total amount that was due for the cotton. Yes, you can take any other lot of cotton of 100 or 300 bales and figure in the same way and arrive at a proper and correct result."

And also:

"The method of which I have testified that I arrived at the average weight of this cotton, and then the average price of this cotton, is the method used by cotton buyers and cotton sellers in buying and figuring cotton, in figuring the price; that is to figure the total and not each specific bale. In making settlements, that is the way we all figure it, figure the average and add up the total, we first take our grades and then get our average grade, then we get our price on the basis of middling, and then we get the total weights, and we multiply our average price by total weights, and in that way we make our settlements all the time. That is the method used generally by men in the cotton business in buying cotton. The sum of $25,-979.68 was the value of the 405 bales of cotton at the time of that fire; that was the value."

And also:

"I do know from my experience as a cotton man how to take a list of cotton of 405 bales, of different grades and different weights, and figure the market price of that lot of cotton without figuring each bale separately. I do that by figuring the average on it. I figured

the average of this cotton. I was familiar with the price of cotton at the time of this fire."

O. L. Harrison, one of the adjusters for plaintiff in error, was also used as a witness by defendants in error on the issue of value of the cotton destroyed, and on this issue testified, with reference to the Galveston market price, as follows:

"I have met Heckman, the secretary of the Galveston Exchange, that is I don't know whether I have met him; if he is the same secretary that has been there for several years, I have met him, and if he is a new secretary, I have not met him. Those quotations there of the spot cotton, there of different grades, are low ordinary, 6½¢; ordinary, 7½¢; good ordinary, 9⅛¢; low middling, 11⅜¢; middling, 13¢; good middling, 14¢; middling fair, 14⅜¢. The market in Galveston the day of the fire was just around 13¢ on middling quotations. I do not recall the exact figure, but that is about around what I remember it."

Roland Jones on this point testified, among other things:

"I heard Mr. McKnight's testimony with reference to manner of arriving at average prices and grade of cotton. It is almost the universal custom among cotton men, where several grades are in an invoice, to use that method in making settlements and arriving at the grades and price of cotton. The purpose is to eliminate so much detail figuring. Yes, if you had 400 or 5,000 bales of cotton of different grades, I could arrive at its average grade and average price, and ascertain the total value in much less time, with much less work and figuring."

All the books kept by Roland Jones & Co., as well as all data pertaining to their cotton transactions during the season in question, such as canceled checks and drafts used in the purchase of same, weight sheets, etc., were also in evidence, from which books and data, the weights and grades of the 405 bales of cotton claimed to have been destroyed were shown; all of which matter was, of course, relevant and proper for the consideration of the jury on the question of market value, and if the weights and grades of the 405 bales of cotton claimed to have been destroyed, and which were found by the jury to have been destroyed, were, in fact, the true weights and grades then, undoubtedly, the verdict of the jury as to the total market value of the 405 bales is abundantly supported by the evidence in this record, because as to the manner of arriving at such value by the method used by figuring the averages, as shown by both Roland Jones and C. A. McKnight, being the usual and proper method of arriving at such value, there is practically no dispute in the record.

It is contended by plaintiff in error, and that contention is sustained by the record, that the season in question was a very unfavorable one, and that cotton in general throughout the section and vicinity from which the cotton in question came was damaged to a large per cent., it having been shown that the season was an excessively wet one, and that much unfavorable weather prevailed in the gathering and marketing of the cotton, and it was also shown by plaintiff in

error, by positive testimony, that much of the cotton which had been assembled by Roland Jones & Co. at the San Augustine compress during that season was wet and damaged, and of low grade, and the evidence of plaintiff in error along this line was of such character as would have warranted a verdict by the jury that the market value of the 405 bales of cotton destroyed was considerably less than that actually found by the jury; but we again repeat what we said with reference to the jury's verdict as to the number of bales destroyed, that this was a question of fact for the determination of the jury, and the state of the evidence on this issue was such that we cannot say that the verdict of the jury does not find support thereupon, and, certainly, the verdict is not so overwhelmingly against the preponderance of the evidence on this point as to appear to this court to be clearly wrong; and such being the state of the evidence, we adhere to the rule that this court should not disturb the verdict of the jury. We might add, also, in this connection, that while the record is virtually without dispute as to the unfavorableness of the season for harvesting and gathering and marketing cotton, yet it is also overwhelmingly shown by the testimony that it was the policy and practice of Roland Jones & Co. to dispose of their low grades of cotton as fast as they could, and to hold their best grades for a rise in the market, for the reason that the demand for high grade cotton was growing all the time during that season, and this accounts, according to the contention of defendants in error, for the amount of good grade of cotton that was on hand at the time of the fire. We have no hesitancy in concluding that the record in this case is not in such shape as to warrant this court in disturbing the verdict of the jury on this question of fact relating to market value, and this assignment is, therefore, overruled.

[7] The fourth assignment of error is as follows:

"The verdict of the jury in response to question No. 3 is contrary to the great preponderance of the evidence."

Question No. 3 was as follows:

"At the time of the fire, on March 24, 1914, did the books of the plaintiffs reflect substantially the condition and weights and grades of the purchases of cotton, sales of cotton, and cotton on hand? You will answer this question 'Yes' or 'No' as you may determine the fact to be."

The jury answered: "Yes."

As said with reference to the consideration of the first assignment of error herein, if this court were to undertake to go into all the evidence, and attempt to set out the same, even substantially, here, in disposing of this assignment, the opinion would be so unreasonably long and prolix as to forbid our doing so, and therefore, we content ourselves, in disposing of this assignment, with what we have said as to the first assignment of error,

and hold that the same ought not to be sustained, and is, therefore, overruled.

We think that a substantial compliance with the terms of the policy, as to the keeping of books, was sufficiently shown by all the evidence before the jury to warrant their finding on this point.

The fifth assignment of error is:

"The verdict of the jury in response to question No. 5 is contrary to the great preponderance of the evidence."

Question No. 5 was as follows:

"Did the books kept by the plaintiffs, and produced to the defendant after the fire, show correctly the number of bales of cotton that were on hand and were destroyed in the said fire, and the identity and weight and grade of each bale? You will answer this question 'Yes' or 'No' as you may determine the fact to be."

The jury answered: "Yes."

What we have said with reference to the first and second assignments of error disposes of this assignment, and it follows therefrom that the same should be overruled, which is done.

The sixth assignment of error is:

"The verdict of the jury in response to question No. 7 is contrary to the great preponderance of the evidence."

Question No. 7 was as follows:

"Since the fire, on March 24, 1914, have the plaintiffs, or anyone with their knowledge or consent, made or changed or erased any entry in the books, affecting the determination from said books of the amount of their loss by reason of said fire? You will answer this question 'Yes' or 'No,' as you may determine the fact to be."

The jury answered: "No."

The sixth, seventh, and eighth assignments of error are overruled, for the reason that we are of the opinion that what we have heretofore said, in disposing of preceding assignments, in effect, disposes of each of these assignments.

[8] By the ninth assignment of error, complaint is made as follows:

"The form of judgment authorizes execution in favor of the plaintiffs, Roland Jones & Co., as a firm composed of Roland Jones and C. A. McKnight, against the defendant for the sum of $27,122.48, and interest, and also authorizes execution in favor of the First National Bank of San Augustine, Tex., for the sum of $15,-844.63, and interest, and the Commercial National Bank of Nacogdoches for the sum of $2,655.60, and interest, and in favor of the Stone Fort National Bank of Nacogdoches for the sum of $2,354.90, and interest. The authorization of execution in favor of both Roland Jones & Co. and each of said banks is error."

In order that it may be clearly seen that this assignment should not be sustained, that portion of the judgment complained of is here now set out in full, as follows:

"It is further ordered, adjudged, and decreed by the court that the plaintiffs, Roland Jones & Co., composed of Roland Jones and C. A. McKnight, do have and recover of and from the defendant, the Liverpool & London & Globe Insurance Company, Limited, the sum of $27,-122.48, with interest thereupon from this date until paid, for which it may have its execution, and that of said sum said plaintiffs recover of the Liverpool & London & Globe Insurance

Company, Limited, for the use and benefit of the defendant and intervener, the First National Bank of San Augustine, Tex., the sum of $15,844.63 with 10 per cent. interest thereon from this date until paid, and that the said plaintiffs Roland Jones & Co. recover of said sum so recovered by it from the defendant, the Liverpool & London & Globe Insurance Company, Limited, for the use and benefit of the defendant and intervener, the Commercial Guaranty State Bank of Nacogdoches, Tex., the sum of $2,655.60, with 6 per cent. interest thereon until paid; so recovered by it from the defendant, the Liverpool & London & Globe Insurance Company, Limited, for the use and benefit of the defendant and intervener, the Stone Fort National Bank of Nacogdoches, Tex., the sum of $2,354.90, with 6 per cent. interest thereon from this date until paid.

"It is further ordered, adjudged, and decreed by the court that said several sums so recovered by the plaintiffs, Roland Jones & Co., against the defendant, the Liverpool & London & Globe Insurance Company, Limited, for the use and benefit and use of said several banks, as hereinabove adjudicated, be also recovered by each of said several banks against the defendant, the Liverpool & London & Globe Insurance Company, Limited, for which said banks and each of them may have its execution against said defendant.

"It is the further judgment of this court that the payment by the defendant, the Liverpool & London & Globe Insurance Company, Limited, of any or either of the sums hereinabove adjudicated to the use of said banks or either of them, shall be credited as a payment pro tanto on said judgment, in the sum of $27,122.48, recovered by the plaintiffs, Roland Jones & Co. against the defendant, the Liverpool & London & Globe Insurance Company, Limited, as above set out."

It will be remembered that the policy in question contained a provision to the effect that the same should be payable to such banks or bankers as might advance money for the purchase of cotton by Roland Jones & Co., and all of the banks that advanced money were made parties to the suit upon the prayer of plaintiff in error; and each of such banks clearly showed its right to recover the amount decreed in its favor, in the event liability of the insurance company was established; and it is clear from the judgment complained of that it is provided that a payment to these banks or to either of them should be credited on the entire judgment recovered by Roland Jones & Co., and that this judgment does not allow a double recovery, as contended by plaintiff in error. The assignment is, therefore, overruled.

[9] In the beginning of this opinion, in stating the issues made by the pleadings, it is shown that, among other pleas interposed as a defense by plaintiff in error against the right of Roland Jones & Co. to recover, was a plea of fraud to the effect that Roland Jones & Co. fraudulently presented to plaintiff in error, after the fire, a claim for the destruction of a number of bales considerably in excess of the true number destroyed, and other phases of fraud unnecessary to mention; but, as the record is before us, there is no question of fraud raised, and there was, in fact, no issue of fraud submitted to the jury

by the trial court, and there is no complaint in this court of any action on the part of the trial court in refusing to submit any issue of fraud, and if there was any issue of fraud raised by the evidence, there was no finding by the jury in favor of plaintiff in error on such issue, and in view of the trial court's judgment upon the verdict of the jury in favor of defendants in error, if there was any issue of fraud made by the evidence, as pleaded by plaintiff in error, which we seriously doubt, then it will be presumed that such issue was found by the court against plaintiff in error. Vernon's Sayles' Statutes, art. 1885.

In conclusion, we desire to say that each assignment of error contained in the brief of plaintiff in error has had careful consideration by this court, and, while we have not discussed these assignments at very great length, on account of the condition of this extraordinarily voluminous record, we have concluded that none of the assignments should be sustained, and that in fact, the truth and justice of the case have been arrived at, as reflected by this record. All assignments of error are, therefore, overruled.

As shown above, the amount of the judgment against plaintiff in error, as originally entered, was $27,122.48, but defendants in error, in due time, entered a remittitur to the extent of $325, and, therefore, the trial court finally entered judgment in their favor for the sum of $26,797.48, together with legal interest thereon until paid. Therefore, since we have found no error in the record requiring a reversal, the judgment of the trial court, as finally entered, is in all things affirmed.